### JONES *v.* BROOKLYN, B. & W. E. R. CO.

*(City Court of Brooklyn, General Term.*   December 26, 1888.)

1. WITNESS—COMPETENCY—PRIVILEGED INFORMATION—PHYSICIANS.
    In an action for personal injuries necessitating the amputation of plaintiff's leg, the question asked the physician who performed the operation: "What was the condition of plaintiff's leg at that time?" was properly excluded as calling for information privileged under Code Civil Proc. N. Y § 834, which provides that a physician shall not be allowed to disclose any information acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.[1]

2. SAME—WAIVER OF PRIVILEGE—ACTION FOR DAMAGES.
    Such privilege was not waived by bringing an action for the injuries to his leg, and by offering testimony to the fact that it was broken.[1]

3. SAME—EXAMINATION OF DEFENDANT'S PHYSICIAN.
    Nor by the fact that defendant after the accident sent its physician to the plaintiff, and at the trial examined him fully in relation to plaintiff's injuries.[1]

4. WITNESS—COMPETENCY—INFANCY.
    A lad of 11 years, who testified that he believed in heaven, the home of God, and hell, the home of the Devil; that at death the good will go to the former, and the

[1] See note at end of case.

bad to the latter; that it was bad to lie, both in and out of court; for the former his parents would whip him, and for the latter he would be sent to prison,—was compe tent to testify.

Appeal from trial term.

Action by Jesse Jones against the Brooklyn, Bath & West End Railroad Company to recover damages for personal injuries sustained through the alleged negligence of defendant. On the trial, the physician who attended plaintiff and amputated his leg, was asked what was the condition of plaintiff's leg at that time. This question was excluded as calling for information privileged under Code Civil Proc. N. Y. § 834, which provides that "a person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." By § 836 the above section applies to "every examination of a person as a witness, unless the provisions thereof are expressly waived by the person confessing." Defendant appeals from a judgment for plaintiff.

*Cornelius Furgeson, Jr.*, for appellant.    *Charles J. Patterson*, for respondent.

VAN WYCK, J.    This is an action to recover damages for personal injuries through the negligence of defendant. There is a direct conflict between the theory of plaintiff and that of defendant in reference to the accident. The testimony for plaintiff tends to show that while he was in the act of getting on an open car, the conductor gave the signal to start, and that the train was started with a violent jerk, throwing him down and breaking his leg. The testimony for defendant tends to show that plaintiff, while attempting to cross in front of the engine, was knocked down, and his leg was broken in that way. Some of the witnesses for the defendant did not identify the plaintiff, and it is not impossible that they have confused this occurrence with some other accident at the same station. The defendant elicited from one of its own witnesses that plaintiff, the morning after the accident, described the manner of the accident substantially the same as he did on the trial. The conflict between the two theories was fairly submitted to the jury. The jury were instructed that if plaintiff was injured in an effort to cross in front of the engine he could not recover; and that if they determined that plaintiff was thrown down by the starting of the train, while he was in the act of getting on, then it was for them to say whether defendant was negligent or not. The jury settled the question of fact in favor of the plaintiff, and we see no reason to interfere with their decision.

Drs. Lester and Buckmaster testified that they were called in consultation with Dr. Maxfield to examine the injuries of plaintiff, and that they examined the injuries to his leg on the day of the operation,—the amputation of his leg. Then defendant's counsel asked each of them: "What was the condition of Jones' leg at that time?" This was excluded on the ground that it called for privileged information acquired by a physician in attending a patient in a professional capacity, and necessary for him to act in that capacity. There is no question that the relation of physician and patient existed between the parties at that time. But defendant's counsel insists that the testimony called for did not affirmatively appear to be information necessary to enable the physician to act in his professional capacity. To our minds this is a refinement that would soon wipe out the beneficent influence of the rule of silence imposed upon a physician in the interest of suffering humanity. The object of this rule was to encourage patients to disclose freely to the physician's hearing, touch, and sight all that would aid the physician to a correct diagnosis of the patient's troubles, and to an intelligent application of his skill thereto. A person's leg is broken, the physician or surgeon is called in, who examines and amputates it. It is self-evident that the information so

acquired was necessary to enable the physician and surgeon to use his knife, and apply his drugs. It is unreasonable that the secrets must be first told to enable the court to determine that they were necessary to the physician's action in his professional capacity, and therefore were privileged, and could not be used in evidence. This would accomplish as much good as did the locking of the stable after the horse was stolen. The counsel of appellant insisted that the statute did not apply to this testimony; that the condition of a broken leg did not call for the disclosure of any of the secrets of the patient; that the condition of the leg was obvious to all; that privacy, the reason of the rule, having failed, the rule itself failed. The scars received sometimes in the wars of Venus are as plain to sight as a leg broken in a railroad accident; yet the physician has no more right to expose the latter to public gaze than the former. *Renihan* v. *Dennin*, 103 N. Y. 573, 9 N. E. Rep. 320; *Grattan* v. *Insurance Co.*, 80 N. Y. 281. The counsel seems to have been misled by the following language of the learned judge delivering the opinion in *Edington* v. *Insurance Co.*, 77 N. Y. 571, viz.: "Suppose a patient has a fever, or a fractured leg or skull, or is a raving maniac, and these ailments are obvious to all about him, may not the physician who is called to attend him testify to these matters? In so doing there would be no breach of confidence, and the policy of the statute would not be invaded." If this is the law, what would prevent the physician from testifying to cancers, fistulas, tumors, syphilitic marks and sores, all of which may be obvious to others than the medical expert? But such is not the law; and the same judge, in referring to this citation, says in *Renihan* v. *Dennin*, 103 N. Y. 579, 9 N. E. Rep. 320, where the same question, viz., that the statute should be confined in its application to information of a confidential nature, came before the court [as] in *Grattan* v. *Insurance Co.*, 80 N. Y. 281: "I again attempted to enforce the same view upon my brethren, and again failed, and it was then distinctly held that the statute could not be confined to information of a confidential nature, and that the court was bound to follow and give effect to the plain language, without interpolating the broad exception contended for."

It is now very apparent that such information is privileged unless "expressly waived." Appellant contends that the privilege has been waived.

1. Plaintiff has voluntarily exposed the condition of his leg in bringing an action to recover for injuries thereto, and by offering testimony to the fact that it was broken. That one does not waive the privilege by the commencement of an action to recover damages for the injuries which the physician has been called to attend has been settled in *Sloan* v. *Railroad Co.*, 45 N. Y. 125; *Hope* v. *Railroad Co.*, 40 Hun, 441; affirmed 110 N. Y. 643, 17 N. E. Rep. 873. That the plaintiff testified his leg was broken does not open the mouth of the physician to tell all the information he has acquired. The condition of plaintiff's leg to the experienced eye of a physician might have disclosed much that had not been exposed, viz., scrofula in the glands of the leg, or erysipelas of the skin of the leg. It was admitted by both sides that the plaintiff's leg was badly fractured. Defendant certainly did not care to impress this fact upon the jury; therefore it must be some other information acquired by the physician which he sought to elicit. Did the bringing of the action, and the testimony of plaintiff that his leg was broken, waive his right to silence the physician in reference to the secrets he acquired? We think not; and it would not help plaintiff to show by these witnesses that his leg was broken, for that fact was really admitted, or rather not disputed, as well as the fact that it had been amputated.

2. The defendant, after the accident, sent its doctor to the plaintiff, to look after its interest, it is fair to presume, from his testimony, and incidentally to attend the wounds of plaintiff. The defendant put this doctor upon the stand, and examined him fully in relation to the injuries of plaintiff. This, defendant urges, is an express waiver of plaintiff's privilege to silence the other

physicians who attended him professionally. We are at a loss to understand how the acts of defendant can be construed to be an express waiver of plaintiff's right to enforce his privilege. It was the voluntary act of plaintiff that was construed to be a waiver of plaintiff's right in *McKinney* v. *Railroad Co.*, 104 N. Y. 352, 10 N. E. Rep. 544, and not the act of defendant. In our opinion there has been no waiver of the privilege in reference to testimony sought to be elicited from Drs. Lester and Buckmaster. *Record* v. *Saratoga Springs*, 46 Hun, 448; *Hope* v. *Railroad Co.*, 40 Hun, 441; affirmed 110 N. Y 643, 17 N. E. Rep. 873; *Westover* v. *Insurance Co.*, 99 N. Y. 56, 1 N. E. Rep. 104.

The testimony at folio 157 was properly admitted on the cross-examination of defendant's witness to show his bias. The objection was general, and, being admissible to show bias, error cannot be predicated thereupon.

Defendant, in the redirect examination of its witness, asked Maxfield: "Was there anything else said in these conversations [between him and plaintiff and his wife] that plaintiff's counsel has asked, in addition to what you have already testified in response to him? *Answer*. Mrs. Jones stated, and so did Mr. Jones, that they would like a settlement, because they needed the money, but they were afraid to, because of Mr. Patterson" (plaintiff's attorney.) At folio 313 Mrs. Jones was properly allowed to contradict this statement brought out by the opposite party.

The witness James Jones was a lad of 11 years, who testified that he believed in heaven, the home of God, and hell, the home of the Devil; that at death the good will go to the former, and the bad to the latter; that it was bad to lie, both in and out of court; for the former his parents would whip him, and for the latter he would be sent to prison. We think this witness was competent to testify. 1 Greenl. Ev. (14th Ed.) §§ 367–369. For the foregoing reasons the judgment and order must be affirmed, with costs.

CLEMENT, C. J., concurred.

## NOTE.

WITNESS — PHYSICIAN AND PATIENT — PRIVILEGED COMMUNICATIONS. Professional communications, made to a physician, are ordinarily not privileged in the absence of statute making them so. Steagald v. State, (Tex.) 3 S. W. Rep. 771. But such statutes exist in many states. Under the *Indiana* statute, a physician can divulge nothing concerning his patient which comes to him solely in his professional capacity, Turnpike Co. v. Andrews, 1 N. E. Rep. 364; whether his knowledge is acquired by words of the patient, his own observation, or is the result of a professional examination, Heuston v. Simpson, (Ind.) 17 N. E. Rep. 261. Under the *Iowa* Code, where a physician testifies that he asked his patient how an accident, whereby the latter was injured, occurred, in order to know how to treat him for the injury, the patient's answer is inadmissible, Raymond v. Railway Co., 17 N. W. Rep. 923; and an attendant physician cannot testify to such communication, though it was made to his partner, in his presence, Id. See, also, same case on rehearing, 21 N. W. Rep. 495.

The statutes do not create an absolute disqualification, but one which may be waived. Carrington v. City of St. Louis, (Mo.) 1 S. W. Rep. 240; Railroad Co. v. Martin, (Mich.) 3 N. W. Rep. 173; Scripps v. Foster, Id. 216; Fraser v. Jennison, Id. 882; Adreveno v. Association, 34 Fed. Rep. 870. The privilege, however, is for the benefit of the patient, continues indefinitely, and can be waived by no one but the patient himself. Storrs v. Scougale, (Mich.) 12 N. W. Rep. 502. It cannot be waived after the patient's death, by his executor. Loder v. Whelpley, (N. Y.) 18 N. E. Rep. 874. *Contra*, under the *Michigan* statute, Fraser v. Jennison, (Mich.) 3 N. W. Rep. 882. The patient waives it by calling the physician to testify to the information thus acquired. Carrington v. City of St. Louis, supra. But for the patient to testify that a certain physician treated her for certain injuries, does not waive the privilege, Williams v. Johnson, (Ind.) 13 N. E. Rep. 872; and a waiver of the privilege as to one physician, by calling him to testify, does not waive it as to another. Dotton v. Village of Albion, (Mich.) 24 N. W. Rep. 786. When the patient waives the privilege, and the question is relevant and material, the court should compel the physician to answer. Valensin v. Valensin, (Cal.) 14 Pac. Rep. 397.