NUMRICH *v.* SUPREME LODGE KNIGHTS AND LADIES OF HONOR.

*(City Court of New York, Trial Term.* January, 1889.)

**1. INSURANCE—MUTUAL BENEFIT SOCIETIES—FALSE REPRESENTATIONS.**
  A statement in an application for membership in a benevolent society that the applicant has not been attended by a physician for nine years is material to the risk; and the applicant having been attended by various physicians professionally several times within a few months previously, and having died within three months afterwards, the membership certificate is void, whether the statement is a warranty or representation.[1]

**2. SAME—CONTRACT—RECITALS OF CERTIFICATE.**
  Where the constitution of a benevolent society requires each member to procure a certificate from the subordinate medical examiner, after examination by the latter, and provides that, if the medical examination is approved by the supreme medical examiner, the applicant shall be entitled to the relief fund, otherwise not, and the certificate requires the insured to comply with all the rules and requirements of the society, the representations by the insured in his medical examination are made the basis of the contract, though the certificate does not refer to them.

**3. SAME—EVIDENCE—PHYSICIANS.**
  In an action on a life insurance policy, defendant may prove by physicians that they attended the insured professionally, though information acquired in such attendance cannot be disclosed under Code Civil Proc. § 834.

Action by Henry Numrich, Sr., individually, and as guardian of his children, against The Supreme Lodge Knights and Ladies of Honor.

The defendant is a benevolent society created under the laws of the state of Missouri, having subordinate lodges throughout the country. On November 23, 1886, Caroline Numrich became a member of Thusnelda Lodge No. 726, located in the city of New York, having previously passed the required medical examination, and having satisfactorily answered the questions put to her in writing by the medical examiner. On the same day the defendant executed and delivered to the said Caroline Numrich a certificate of membership or policy in writing, in and by which it agreed and declared that the said Caroline Numrich was entitled to all the privileges of membership in the defendant corporation, and to participate in its relief fund to the amount of $1,000, and that said sum on her death would be paid to her husband and her children, the plaintiffs herein. The said Caroline Numrich continued to be a member in good standing of the defendant corporation and lodge, up to the time of her death, which occurred February 6, 1887. The defendant received proper proofs of death and demand for payment, but refused to pay the stipulated insurance benefit for reasons which appear in their answer, substantially as follows: The applicant in her application for membership, made at the inception of her entry into the order, according to section 1, art. 6, of the constitution, governing subordinate lodges, "expressly agrees and contracts that any untrue or fraudulent statement or concealment of facts made by her in said application, or in her medical examination, shall forfeit all rights of herself or her family or dependents to all benefits and privileges therein;" and this was followed up by her application to participate in the relief fund, in which she agreed that her answers to the questions propounded were fully correct and true, and that they were the express condition and warranty upon which she was to become entitled to participate in its relief fund, as the constitution and laws of the order provide. The evidence shows that the policy issued by the defendant was based on these applications, and the answers thereto, although the policy does not refer to them. The defendant claims that the insured was guilty not alone of a fraudulent concealment of material facts, but also of a positive breach of the condition and warranty,

---

[1]Respecting false representations as to health and habits in applications for life insurance, as avoiding the policy, see Hoffman v. Legion of Honor, 35 Fed. Rep. 252, and note; Insurance Co. v. Daviess' Ex'r, (Ky.) 9 S. W. Rep. 812, and cases cited; Benefit Ass'n v. Parks, (Me.) 16 Atl. Rep. 339.

in terms, in answering incorrectly and untruthfully the following questions: "(1) How long since were you attended by a physician, or have professionally consulted one? *Answer.* Nine years ago, by Dr. Hitchcock. (2) Are you in good health now? *A.* Yes. (3) Do you usually enjoy good health? *A.* Yes." The defendant also claims that the effect of an untruthful answer to ·either of these questions was directly brought to the notice of the applicant by the last question put to her, viz.: "Do you know, if you have not answered all the questions in this application correctly and truthfully, that your certificate is null and void? *A.* Yes." The evidence to sustain this defense shows that from about July, 1886, until about the time when the insured was examined by the lodge examiner of the defendant, preparatory to her admission to the defendant's order, and after that and up to the time of her death, she had been attended by several physicians for some ailment, the exact nature or character of which could not be disclosed under the provisions of the Code. The defendant claims that the ailment must be assumed to be serious, because it was speedily followed by death. The case turns upon the effect of the representations made in writing, particularly the one in answer to the question as to when the insured last consulted or was attended to by a physician, and the testimony of the different witnesses clearly establishes that this representation (if no other) was untrue at the time it was made. By Code Civil Proc. N. Y. § 834, "a person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to ·enable him to act in that capacity."

*Donohue, Newcombe & Cardozo,* for plaintiff.   *A. Holzle* and *H. F. Lippold,* for defendant.

McADAM, C. J., (*after stating the facts.*) The distinction between a warranty and a representation is that the former is contained in and forms part ·of the contract, and must be complied with, whether material to the risk or not, while the latter is outside of the contract, and is immaterial, whether it is true or false, unless material to the risk. *Chase* v. *Insurance Co.*, 20 N. Y. 57; *Campbell* v. *Insurance Co.*, 98 Mass. 389. The difference between a ·certificate of membership in a beneficial association and a life policy is that, in the latter, the rights of the beneficiary are fixed by the policy, while in the former they depend upon the constitution and by-laws of the society. *Benefit Ass'n* v. *Burkart,* 10 N. E. Rep. 79, cited with approval in *Grossman* v. *Supreme Lodge,* 13 N. Y. St. Rep. 596. In this view of the law, the fact that the certificate or policy sued upon does not refer to the application, and make it part and parcel of the contract, is not of paramount importance; for ·the policy in terms requires that the insured, while a member of the order, :shall comply with all the rules and requirements thereof. The constitution governing subordinate lodges requires each member of the order to procure a ·certificate of his physical condition from the subordinate medical examiner, after undergoing an examination by him, and provides that, "if said medical ·examination is approved by the supreme medical examiner, the applicant .shall be entitled to the relief fund; otherwise the applicant is declared ineligible, except as a social member." Article 6, § 1. The examination, reduced to writing by the subordinate medical examiner, is sent by him to the supreme medical examiner, and, if approved of by him, it is sent to the supreme secretary, who transmits the report to the secretary of the subordinate lodge, and the certificate or policy is thereupon issued to the successful candidate. Const. Supreme Lodge, art. 9, § 7. The entire scheme shows that the answers of the applicant are made the basis of the contract, and are regarded by the supreme medical examiner and by the lodge as conditions precedent to the contract, and that any untrue declaration by the applicant in regard to his physical condition operates as a fraud upon it. The representa-

tion made by the insured, that she had not been attended to by a physician: for nine years, was material. It was calculated to induce the belief that her general health had been good for a considerable period of time, and, appearances favoring that conclusion, the risk seemed to be a fair one for the defendant to assume. The representation was the basis of the contract, (Bliss, Ins. § 293,) and, if in the nature of a warranty, it is practically conceded that the policy was in consequence avoided. *Valton* v. *Insurance Co.*, 20 N. Y. 32;. *Horn* v. *Insurance Co.*, 64 Barb. 81; *Smith* v. *Insurance Co.*, 49 N. Y. 211;. *Cushman* v. *Insurance Co.*, 63 N. Y. 405; *Barteau* v. *Insurance Co.*, 67 N. Y. 595; *Armour* v. *Insurance Co.*, 90 N. Y. 450; *Edington* v. *Insurance Co.*, 100 N. Y. 536, 3 N. E. Rep. 315; *Dwight* v. *Insurance Co.*, 103 N. Y. 341, 8 N. E. Rep. 654; *Insurance Co.* v. *France*, 91 U. S. 510; *Jeffries* v. *Insurance Co.*, 22 Wall. 47; *Harris* v. *Society*, 3 Hun, 724; *Mayer* v. *Association*, 49· Hun, 336, 2 N. Y. Supp. 79.

In this case it is not important whether the statement made by the insured is regarded as a warranty or a representation; for being the basis of the contract, and false in a material respect, it defeats the action, whether more properly called by the one name or the other. It is therefore unnecessary to decide under which head it falls. The statement was material to the risk, and. one about which the insured could not have been mistaken. The evidence shows that the plaintiff called five times for medical treatment at the German Polyclinic, to-wit, on October 12, 21, November 4, 9, and 15, 1886. She was also· attended by Dr. Guden in July, 1886, and by Dr. Schmidt in the early part of October, 1886. If she had answered that she had been professionally attended at these several times, the medical examiner of the defendant might, and probably would, have made a more searching medical examination, or· consulted these gentlemen, or, without going to further trouble, might have declined the risk entirely. Her answers are supposed to have influenced his· judgment more or less; as they were favorable, so was the impression they naturally created. The evidence proves that the answers were untrue, and their falsity furnished the defendant with a complete defense. As the amount insured is small, the defendant, as a benevolent organization, might (if it had. chosen to do so) have thrown the broad mantle of charity over its deceased. member by adjusting the loss without litigation, but, as truth and charity seem to be concomitant requirements of the order, the defendant had the legal. right to resist the demand made, and interpose the breach of the one obligation. as a bar to the enforcement of the other. The liability to pay is founded solely· on the contract obligation, which must be enforced (if at all) by the general. principles applicable to life insurance. The defendant agreed to pay a specified sum on certain contingencies, and cannot be forced to pay it unless they occur in the manner agreed; and, while it may voluntarily bestow charity, it, cannot be compelled to do so against its will. In contracts for life insurance,. the prevailing maxim is *uberrima fides*, and the best of faith must be observed by each of the contracting parties, for the foundation stone of the obligations is truth. ·

The defendant was permitted at the trial to prove by the physicians that: they attended the insured professionally. This was proper to establish that. the confidential relation of physician and patient existed between the parties,. (*Grattan* v. *Insurance Co.*, 80 N. Y. 295,) but as soon as the relation was: established the seal of secrecy imposed by the statute was kept sacred, (Code,. § 834,) and thus all evidence of her physicians, tending to show the nature· of the ailment of the patient, or the cause of her death, was kept out of the case. The fact of the medical attendance, however, sufficiently proved the untruthfulness of the representation that she had not been so attended, and established the defense pleaded. The additional fact that the insured lived but two months and twelve days after joining the order gives color, at least, to the claim that the medical attendance was required, not for any imaginary.

or temporary ailment, but one which the after-event (death) demonstrated to be permanently located in the system at the time professional aid was called, and that it was of a nature not calculated to prolong, but shorten, life,—a, circumstance making the risk a precarious one for the defendant to accept. Under all the circumstances, there must be judgment for the defendant.