\* IN THE MATTER OF THE PROBATE OF THE LAST WILL AND TESTAMENT OF CATHARINE DARRAGH, DECEASED.

*Physician — competency of, to testify as to the testamentary capacity of a decedent — what information obtained by him may not be used.*

Upon the hearing before a surrogate, upon an application to admit to probate the will of Catharine Darragh, deceased, objections were raised upon the ground of a want of testamentary capacity upon the part of the testatrix. It appeared that the physician, who had at one time attended the deceased in a professional capacity, had thereafter for a considerable period visited her as a friend and not in a professional capacity, and the evidence showed that the impressions which he gained upon these friendly visits necessarily related back to, and were influenced by, the knowledge which he had acquired during the time that he was attending her professionally.

*Held,* that it was not necessary to establish that the knowledge which he had acquired in respect to his patient, while he was attending her professionally, was necessary to enable him to prescribe for her; that it was only necessary, in order to preclude him from testifying, to show that he had obtained the information during the course of his professional visits.

The intention of the prohibition was to protect all communications made by a patient to her physician, which the patient supposed, or had reason to believe, were protected by the provisions of the law.

---

\* Decided March Term, 1889.

A physician, who had been employed by and rendered services to the deceased prior to her death, which occurred in November, 1886, paid two visits to her in January, 1886, which, it was claimed, were not professional visits.

He was then asked, and allowed to answer, *against the objections* of the contestant, this question: "Now, as the result of what you saw and heard on these two occasions, in January, and subsequently in the year 1886, would you say that Mrs. Darragh was in a condition to understand the nature of a will or the disposition of property, or had the ability to make a contract intelligently?"

*Held*, as the question was not restricted to the interviews which took place in January, but embraced all the time subsequent thereto up to the time of her death, and as, during this subsequent time, the physician was undoubtedly attending the testatrix in a professional capacity, that it was error to receive this testimony.

APPEAL from a decree made by the Surrogate's Court of the county of New York, admitting the last will and testament of Catharine Darragh, deceased, to probate, which was entered in the office of the clerk of the said Surrogate's Court on the 14th day of May, 1888.

*Alexander Thain*, for the appellant.

*James P. Campbell*, for the executors, respondents.

*W. N. R. Alcott*, guardian *ad litem.*

VAN BRUNT, P. J.:

Among the objections raised to the admission of the will in question to probate was the want of testamentary capacity upon the part of the testatrix.

It appears from the evidence in this case that she had been attended by various physicians for a considerable period of time prior to her decease, and that attempts were made upon both sides to avail themselves of the evidence of these physicians. The learned surrogate applying the rule, which now seems to be well settled, in reference to the disclosure of information acquired by physicians in respect to their patients while attending them in a professional capacity, excluded from consideration the evidence of a physician which was offered upon the part of the contestant. The ruling of the learned surrogate was, beyond question, correct in this regard. It appeared that the physician in question had attended the deceased in a professional capacity, and that, although for a considerable period, he had visited her as a friend, and not in a professional

capacity, the evidence showed that the impressions which he gained upon these friendly visits necessarily related back to and were influenced by the knowledge which he had acquired during the time that he was attending her professionally.

It is urged, upon the part of the appellant, that it was not shown that the knowledge which he had acquired in respect to his patient by the physician, while he was attending her, was necessary to enable him to prescribe for her. But it seems to us, in view of the rule laid down by the Court of Appeals in construing the statute prohibiting the disclosure by physicians of the information they have received in respect to the condition of their patients, that it was not necessary that this should be established, and all that it was necessary to establish in order to preclude the physician from testifying was that he had obtained the information during the course of his professional employment. And this is the only reasonable construction to be placed upon the statute, because, otherwise, it is placing it within the physician's power to violate the statute at will. The information which the physician receives by his eyes, by his ears and by his touch, is in the course of his professional employment, and it may or may not be necessary for the purpose of prescribing; and this necessity may only be disclosed by the very fact of the imparting of the information, and, therefore, although information of this character may be communicated, supposedly, under the safeguards thrown around such communications by the law, yet it may turn out that such disclosure was not necessary to enable the physician to act in a professional capacity ; but this could only be ascertained after the disclosure had been made. It is so difficult to draw the line that it is certainly best to err upon the side of safety, and shut the door against all disclosures of information acquired by a physician in attending a patient in a professional capacity, without requiring absolute proof that such information was necessary to enable him to act in that capacity.

The intention evidently was to protect all communications made by a patient to his physician which the patient supposed, or had reason to believe, were protected by the provisions of the law. This seems to be the construction of this section adopted by the highest court, and that it is the one which accords best with the evident

policy of the law is manifested by the restriction which it has thrown around the disclosures to attorneys and priests. Therefore, in the case at bar, this physician being unable to separate the knowledge which he had acquired as a physician, or while attending her in a professional capacity, from the knowledge which he acquired when paying her a friendly visit, it is clear that his testimony was properly rejected.

The same rule excludes the testimony offered by the physician who was examined upon the part of the respondent. It appeared from the evidence that he was employed as the physician of the deceased. It is not distinctly shown when such employment commenced, but it is apparent from the evidence that such employment commenced and such services were rendered prior to the death of the deceased. This witness it appears had paid two visits to the deceased in January, 1886, which it is claimed were not professional. He was asked this question: " Now, as the result of what you saw and heard on these two occasions in January, and subsequently in the year 1886, would you say that Mrs. Darragh was in a condition to understand the nature of a will or the disposition of property or had the ability to make a contract intelligently? This was objected to on the ground that the witness had been shown to be the attending physician of the deceased ; the objection was overruled, the contestant excepted, and the witness answered that he could not say that she was incapacitated from making a will or disposing of her property. It should have been said, perhaps, that the testatrix died in November, 1886.

The question asked did not restrict itself to the interviews which took place in January, but embraced all the time subsequently up to her death, and during this subsequent time the physician was undoubtedly attending the testatrix in a professional capacity. It is claimed, upon the part of the respondent, that the question only related to the interviews in January, but the language of the question is: " On these two occasions in January, and subsequently in the year 1886," thus clearly relating to times subsequent to January and within the prohibition of the law. It was error to receive this testimony, and it was error to consider this testimony. Upon reading the opinion of the learned surrogate it would appear that his attention had not been properly called to the peculiar nature of this testimony

so that it might be rejected by him, all the evidence having been taken by a referee. This seems to have been a fatal error. We cannot determine as to whether the learned surrogate considered this evidence or not. It was important; it bore directly upon the issues between these parties and was of precisely the same nature as that which had been excluded when offered on the part of the contestants; and it is for this reason that we think that the attention of the surrogate could not have been called to this exception, otherwise he would have made the same ruling in respect thereto that he had made in respect to the evidence of the previous physician.

Other exceptions appear in the case to the apparent exclusion of testimony which, if it had been in reality excluded, would have been error. The witness Darragh was asked as to conversations which took place between the deceased and a Mrs. Duffin. These questions, upon the face of the record, appear to have been excluded, but, upon an examination of the evidence, they would seem to have been fully answered, and the contestants, because of this particular exclusion, have not received any harm.

It is true that, under the provisions of the Code, a decree admitting a will to probate should not be reversed for an error in admitting or rejecting evidence, unless it appears that the contestant was necessarily prejudiced thereby. But we think that, in the admission of the evidence of Dr. Conant, the contestants were necessarily prejudiced, as the evidence of a physician attending the deceased would have very great influence with the court in determining any question as to her testamentary capacity and her ability to resist the influence of those surrounding her.

We think, therefore, that the decree of the surrogate must be reversed and the case remitted back to the surrogate for a new trial.

BRADY and DANIELS, JJ., concurred.

Decree of surrogate reversed and the case remitted back to the surrogate for a new trial.