was only part of the whole testimony upon that issue, the circumstances were the other part; the jury could consider it all and adopt the inference deducible from the circumstances instead of that declared by the defendant.

The judgment should be affirmed, with costs.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment affirmed, with costs.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* FRANKLIN V. BROWER, APPELLANT.

*Indictment for assisting in procuring a miscarriage — conversation between the defendant and a physician, when privileged.*

Upon the trial of an indictment charging the defendant with aiding and assisting one Mary A. Brower in procuring a miscarriage, it appeared that the defendant, at the time of the alleged commission of the crime, called upon a person duly authorized to practice physic and surgery and employed him to attend Mary A. Brower. The physician was called on the trial as a witness for the prosecution and was allowed, against the objection and exception of the defendant, to testify that the following conversation took place on the night in question: The defendant said, "For God's sake hurry up, my wife has a fit, or fainted or something; I don't know what." He said, "Probably you would like to know what the difficulty is before you leave the office?" I said, "Yes; it might be a help to me, because I might need something that I would not take with me." He said, "This lady down to the house, I am living with, I am not married to, but I expect to get a divorce from my other wife and get married. This lady is about three months gone in the family-way, and she introduced a catheter, with a wire, in her womb; and after she had introduced it far enough to hurt her I blew in it." I said, "What did you blow in it for?" He said, "I done it before and it worked all right."

*Held,* that the communication to the physician was a confidential one, which, by the terms of the statute, he was forbidden to disclose and that its reception in evidence on the trial was error.

APPEAL by the defendant from a judgment of conviction of the crime of manslaughter in the first degree, rendered against him on a trial before the Court of Oyer and Terminer, held in the county of Rensselaer on the 26th day of November, 1888.

The indictment was found under section 191 of the Penal Code, and charged the defendant with aiding and assisting one Mary A. Brower in performing, by means of an instrument, an operation upon her person with intent to procure a miscarriage, from the effects of which she died, such operation not being necessary to preserve her life.

*T. S. Eagan* and *J. K. Long,* for the appellant.

*Lewis E. Griffith,* district attorney, for the respondent.

LANDON, J.:

On the night of the 18th of June, 1888, the defendant called upon Dr. Crounse, a person duly authorized to practice physic and surgery, and employed him to attend Mary A. Brower, who was at the residence of her parents in Grant's Hollow, Rensselaer county, about three-fourths of a mile from Dr. Crounse's office. The defendant was urgent. The doctor testified that upon coming into his office the defendant said : " For God's sake hurry up, my wife has a fit, or fainted, or something; I don't know what." He said : " Probably you would like to know what the difficulty is before you leave the office." I said, " Yes ; it might be a help to me, because I might need something that I wouldn't take with me." He said : " This lady down to the house, I am living with, I am not married to, but I expect to get a divorce from my other wife and get married. This lady is about three months gone in the family-way, and she introduced a catheter, with a wire, in her womb, and after she had introduced it far enough to hurt her, I blew in it." I said, " What did you blow in it for ? " He said, " I done it before and it worked all right."

Dr. Crounse testified that, upon the defendant's statement, he considered the case an emergency, that time was important ; he had previously prescribed, as a physician, for the defendant, and for one of the children of Mrs. Brower; that on the present occasion he went immediately with the defendant to the house where Mrs. Brower was ; he found her lying upon a bed, unconscious, and, as we judge from his testimony, in a dying condition, and she died in about half an hour. Two physicians, who made an autopsy, testified that, in their opinion, the woman died from shock, caused by

the injection of air into the uterus. Aside from the testimony of Dr. Crounse, there was no evidence tending to connect the defendant with any operation to procure a miscarriage. The testimony of Dr. Crounse, respecting the statement made to him by the defendant, was duly objected to by his counsel under section 834 of the Code of Civil Procedure. The objection was overruled by the court, obviously in deference to the case of *Pierson* v. *The People* (79 N. Y., 427).

Section 834, Code of Civil Procedure, is made applicable to criminal trials by section 392, Code of Criminal Procedure. Section 834 forbids the physician "to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." In civil cases the rule has been rigidly applied. The *Pierson Case* was one of poisoning. The attending physician was permitted to testify to the symptoms and condition of the patient, as he found them from an examination openly made in the presence of the patient's wife and the prisoner, and as he also learned them from the patient, his wife and the prisoner. This testimony was admitted, as we understand the ruling, because although the facts presented brought the testimony within the letter of the act they did not bring it within the spirit. The court remarked, respecting the information acquired by the physician in attending his patient: "There was nothing of a confidential nature in anything he learned or that was disclosed to him. The symptoms and condition were such as might be expected to be present in a case of arsenical poisoning." Stress, also, was laid upon the fact that in no way was the confidence, feelings or character of the patient affected by the disclosure. The present case is widely different. The defendant employed the physician to try to save Mrs. Brower's life. His alarm and anxiety were great. He knew what had taken place, and suspected that it was the cause of her sudden prostration, and felt that the physician ought to know it, and to govern his treatment accordingly. The physician did want to know. In this critical moment, with the sole purpose of saving the woman's life, he disclosed the secret to the physician to enable him to act rightly. To have withheld the disclosure would have made the defendant a consenting party to the woman's death. We have no doubt that the statute, both in its letter and spirit, protects

the confidence thus reposed in the physician and forbids him to betray it. With this testimony stricken out there remains practically nothing to sustain the conviction.

The judgment of conviction and sentence must be reversed and a new trial granted.

LEARNED, P. J., and INGALLS, J., concurred.

Judgment and conviction reversed, new trial granted.

---

# CROWN POINT IRON COMPANY, RESPONDENT, v. ÆTNA INSURANCE COMPANY, APPELLANT.

*Insurance policy — cancellation of, what is essential to — conditions of delivery for cancellation.*

The owner of personal property, upon which a number of policies of insurance had been issued, notified Page, the agent of one of the companies, that he desired to cancel the policies if the companies would return the *pro rata* premium for the unexpired term, and wrote a letter to such agent, inclosing the policy of his company, together with other policies, stating: "I send you insurance policies on charcoal for cancellation. Our stock is nearly used up; we should be allowed for the unexpired term *pro rata* on amount paid." The agent, Page, who received the policies, retained that of his own company, making no reply to the letter in which it was inclosed, and sent by mail to one Little, the agent of the other companies, the policies issued by them with a letter stating: "I inclose the following policies for cancellation as the stock of charcoal is used up. * * * Make the rebate as high as you can. * * * Please make out a bill stating the amount that you can allow on each policy for me to show to Mr. Reed, the agent of the Crown Point Company."

The property having been destroyed by fire on the same evening that the last-mentioned policies were sent to Little, the owner of the property requested Page, to whom he had sent them, to telegraph for their return, which Page did, knowing of the fact of the fire, and the policies were accordingly returned by Little to the insured. Page also, after entering the word "canceled" on his registry, opposite the entry of the Ætna policy, returned that policy to the insured. The agents, to whom these policies were respectively sent, had authority from their respective companies to cancel policies.

*Held,* that the statements in the letters, in relation to the rebate, were not conditions attached to the surrender of the policies.

That as the policies contained provisions authorizing the insured to terminate them, the company retaining short rates for the time the policies had been in force, that