In the Matter of the Probate of the Will of JOHN CONNOR,
Deceased.

*Supreme Court, First Department, General Term, December 2, 1889.*

1. *Will.  Probate.*—The testimony of unimpeached witnesses as to the
facts occurring on the execution of a will cannot be rejected merely
because physicians, who were not then present, testify, from anterior
observations, that they are quite sure that no such events could have
happened.
2. *Same.  Undue influence.*—The harsh treatment of the testator by his
sister is a sufficient reason for his not remembering her in his will, and
such omission is no ground for finding that the will was not the free
act of a disposing mind.
3. *Witness.  Physician.*—The testimony of an attending physician as to
the capacity of the testator, in proceedings for the probate of a will, is
incompetent under section 834 of the Code of Civil Procedure.

Appeal by Mary Ann McCarty from a decree of the sur-
rogate admitting the will of John Connor to probate.

*W. F. MacRae,* for appellant.

*F. R. Coudert,* for respondent.

BARRETT, J.—In view of the decision of the court of ap-
peals in Renihan *v.* Dennin, 103 N. Y. 573, but little need be
said in this case.  It is substantially conceded that the con-
test rests for its main support upon the testimony of the phy-
sician who attended the deceased during his last illness.
The other testimony in support of the contestant's claims
is slight, and it is completely over-borne by the evidence
adduced by the proponents.  Indeed, apart from the physi-
cian's testimony, the contestant seems mainly to rely upon

the cross-examination of the proponent's witnesses, and upon the doubts as to their credibility believed to have been thereby created. But, although some of the statements made by the proponent's witnesses are lacking in candor and are suggestive of too great watchfulness with regard to the effect of their answers, I cannot think that the substance of this testimony should be rejected. There is not, it is true, perfect concurrence between the witnesses, nor entire harmony in all the statements of each witness.

That, however, is not unfavorable to their credibility, for we usually find just such inconsistencies when a number of persons attempt to narrate a particular incident or subject of observation. It would, indeed, be a suspicious circumstance if the testimony of all these witnesses had fitted perfectly, especially in matters of detail.

The conclusion at which I have arrived, after a careful review of this record, is, that even with the physician's testimony in the case, the will was properly admitted to probate. John Connor was undoubtedly a very sick man when the will was executed, but unless scientific opinions with regard to human possibilities are to outweigh actual facts, as testified to by otherwise unimpeached witnesses, he was competent to make a testamentary disposition within the rules laid down in the cases. He was able to give clear instructions for the preparation of the will, and to comply with the usual forms attending the execution of such an instrument. We have no right arbitrarily to reject the testimony of several apparently respectable and unimpeached witnesses to this effect, merely because physicians who were not present when the events occurred tell us that from anterior observations they are quite confident no such events could have occurred.

The will, too, was not, under the circumstances, an altogether unnatural one. John Connor was a single man, and his principal relatives were two brothers, Charles and Robert, and a sister, the contestant. His estate was not large. He left $3,000 to Felix Wilson Connor, his brother

Robert's son, and a like amount to an aunt, Mrs. Kitchen, or Kitching. The remainder of his estate was bequeathed to his brother Charles, in whose house he died and who cared for him in his last illness. The record shows plainly enough why the contestant was not remembered. She had treated John harshly, so much so that he wept over her unkindness and spoke of it to several people.

The brother Robert does not contest, being evidently satisfied with the provision made for his son, and doubtless deeming Charles' kindness in taking the deceased home and caring for him throughout his last illness, worthy of special consideration. Upon all the evidence in the record, I think the learned surrogate was entirely justified in finding that the will was properly executed and was the free act of a disposing mind.

Applying to the case, however, the doctrine of Renihan *v.* Dennin, *supra*, the foundation of the contest falls. It was there expressly held that the provisions of § 834 of the Code of Civ. Pro., to the effect that a physician " shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity," are applicable where the physician is called as a witness in proceedings for the probate of a will. This testimony, therefore, should not be considered, except, possibly, so far as he narrated the incident of Mr. Graham's call upon him in company with Charles Connor, and the advice which he says he then gave as to the impossibility of excuting a will. This was perhaps a fact to be considered on the question of undue influence. It is proper to say, however, that the physician's version of that interview is denied by Messrs. Graham and Connor, who both testify that the advice which he really gave was that a will might " possibly or probably " be made.

Upon the whole, I think that this decree should be affirmed, with costs.

VAN BRUNT. P.J., and DANIELS, J., concur.