## VAN ORMAN *v.* VAN ORMAN.

(*Supreme Court, General Term, Fourth Department.* November, 1890.)

1. WILLS—PROBATE AND CONTEST—APPEAL.

   The decree of a surrogate refusing probate to a will was founded on his conclusions of fact as to want of testamentary capacity and undue influence. *Held* that, on reversal of the decree for error in such conclusions, a trial of the questions of fact by a jury should be directed, under Code Civil Proc. N. Y. § 2588, requiring an order for such trial to be made, where the reversal of such a decree is founded upon a question of fact.

2. WITNESS—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT.

   Upon issues as to testamentary capacity and undue influence, the opinion of the physician attending testator, derived from observations while so acting, as to whether testator "could correctly and intelligently comprehend the nature and condition and value of his property," is inadmissible, under Code Civil Proc. N. Y. § 834, providing that a physician "shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."[1]

Appeal from surrogate's court, Tompkins county.

On the 9th day of September, 1887, Joseph Van Orman, late of Ithaca, Tompkins county, being of the age of 87 years, died, leaving him surviving his widow, Maria Van Orman, and four daughters and two sons. In October, 1887, Thomas Van Orman, one of the sons, and a legatee named in the will, presented a petition to the surrogate of that county asking for citations to attend upon the probate of the deceased's will. Upon the return-day of the citations, Jacob Van Orman, the other son, appeared and filed allegations against the probate of the will. Upon the issue thus framed, testimony was taken before the surrogate at great length; and on the 3d day of January, 1890, the surrogate granted a decree which contained the following provision: "It is adjudged and determined that on the 18th day of June, 1881, at the time said paper writing purports to have been executed, said Joseph Van Orman was enfeebled by disease, unable to comprehend the extent and value of his property, and his relations and obligations to the several members of his family, of unsound mind, and not of sufficient capacity to make a valid will; that, while so enfeebled in mind and body, the subscribing of said paper writing by said Joseph Van Orman, and such execution thereof as and for his last will and testament, as appears from the evidence to have been made, were procured from said Joseph Van Orman by fraudulent and undue influence practiced upon him. It is ordered, adjudged, and decreed that said instrument in writing is null and void as or for the last will and testament of Joseph Van Orman, deceased." In January, 1890, Maria Van Orman, the widow, and a legatee named in said will, filed exceptions to the provisions just quoted, and she presented several requests to the surrogate to find as to matters of fact, which requests the surrogate refused; and she asked him to find, as conclusion of law, viz.: "*First,* that the said last will and testament of said deceased, Joseph Van Orman, was duly executed, and that it is genuine and valid." The surrogate refused to so find. She also requested the surrogate to find "that said Joseph Van Orman, deceased, was in all respects competent to make a last will and testament, and to devise real estate, and was not under any restraint or undue influence." The surrogate refused so to find. The widow was named as an executrix in the will, and she brings an appeal to this court from the decree of the surrogate refusing probate.

Code Civil Proc. N. Y. § 2588, provides that "where the reversal or modification of a decree by the appellate court is founded upon a question of fact, the appellate court must, if the appeal was taken from a decree made upon a petition to admit a will to probate, or to revoke the probate of a will, make

[1] See note at end of case.

an order directing the trial by a jury of the material questions of fact arising upon the issues between the parties."

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

P. G. Ellsworth, for appellant.    J. T. Newman, for respondent.

HARDIN, P. J.   In Society v. Loveridge, 70 N. Y. 387, it was said, viz.: "Although, by the will of an aged invalid, radical changes are made from previous testamentary dispositions, yet, when the testimony shows that the act was free, voluntary, and intelligent, the will will be sustained." In Horn v. Pullman, 72 N. Y. 269, it was said, viz.: "There is no presumption against a will because made by a person of advanced age, nor can incapacity to make a will be inferred from an enfeebled condition of mind or body.   If the testator has sufficient intelligence to comprehend the condition of his property, his relation to those who are or may be the objects of his bounty, and the scope and meaning of the provisions of his will, and if it is his free act, it will be sustained.   The question in all such cases is simply, was the will the free act of a competent testator?   The fact that its provisions were inequitable and unjust furnishes no ground for disturbing it."   After a careful perusal of the evidence given before the surrogate, we are not entirely satisfied with the conclusions of fact reached by the surrogate.   We are therefore of the opinion that we ought to order a new trial of the leading issues of fact arising from the evidence presented upon the hearing had before the surrogate.   We, therefore, pursuant to section 2588 of the Code of Civil Procedure, should direct a trial "by a jury of the material questions of fact arising upon the issues between the parties,   *   *   *   in a circuit court" in Tompkins county.   See In re Martin's Will, 98 N. Y. 193; In re Soule's Will, 3 N. Y. Supp. 259.

2.  Dr. David White was called as a witness for the contestant, and after testifying that he had prescribed for the deceased a great many times, including the months of June and July, 1881, he was allowed to give facts and observations derived by him while acting as his physician, and to express an opinion as to his mental condition.   The contestant put to him the following question: "Do you think he could correctly and intelligently comprehend the nature and condition and value of his property?"   This was objected to by the proponent as incompetent and immaterial.   The objection was overruled, and an exception was taken.   The witness answered: "I would not think so.   That would be my opinion.   I would not think he could, with good judgment."   Section 834 of the Code provides as follows: "A person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity."   That section was interpreted by the court of appeals in Renihan v. Dennin, 103 N. Y. 573, 9 N. E. Rep. 320, and we are of the opinion that the testimony of Dr. White was not kept within the rule laid down in the case just alluded to.

3.  The burden of establishing that the will was procured by undue influence was upon the contestant.   As was said by the court in Martin's Case, supra:  "The will could only be avoided by proof of influence amounting to force or coercion."   And in that case it was further held that "the facts that the proponent of the will was a son of the testatrix, that he communicated to the scrivener the provisions to be inserted in the will, and was himself a beneficiary, were insufficient" to establish undue influence.   Inasmuch as we are of the opinion that the question of fact arising in this case as to whether or no there was any undue influence practiced by the wife upon the deceased must be determined by a jury, we forbear any extensive comment upon the evidence now appearing before us upon that question.   All those facts, and such other as either side may offer bearing upon the

question, will be presented upon a trial to be had before a jury. The decree of the surrogate of Tompkins county reversed, and a new trial ordered, before a jury, in a circuit court in Tompkins county, of the questions (1) whether or no the deceased at the time of the execution of his will, on June 18, 1881, possessed testamentary capacity; (2) whether or no the will then executed by the deceased was procured by undue influence,—with the costs of this appeal allowed to the appellant, "payable out of the estate or fund." Section 2589, Code Civil Proc.

MARTIN, J., concurs. MERWIN, J., concurs in the result.

### NOTE.

PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PATIENT—THE STATUTE. Code Civil Proc. N. Y. § 834 (2 Rev. St. p. 406, § 73,) provides that "a person duly authorized to practice physic or surgery shall not be allowed to disclose any information which he acquired in attending a patient, in a professional capacity, and which was necessary to enable him to act in that capacity."

Code Proc. N. Y. § 390, declaring that the adverse party may be examined as a witness, did not affect the previously existing provision (Code Civil Proc. § 834) that physicians should not disclose information acquired by them while acting in a professional capacity. Edington v. Insurance Co., 67 N. Y. 185.

To WHAT APPLICABLE. A physician cannot be required, when examined as a judgment debtor in supplementary proceedings, to deliver up to the receiver his books of account showing the nature of the maladies of his patients, where he has already furnished the receiver with a list of the accounts. Kelly v. Levy, 8 N. Y. Supp. 849. The statute applies where the attending physician of a testator is called as a witness in proceedings for the probate of the will. Loder v. Whelpley, 18 N. E. Rep. 874; In re Connor's Will, 7 N. Y. Supp. 855; Mason v. Williams, 6 N. Y. Supp. 479; Reinhan v. Dennin, 9 N. E. Rep. 320. But see Allen v. Public Adm'r, 1 Bradf. 221. See, also, In re Boury's Will, 8 N. Y. St. Rep. 809; Burley v. Barnhard, 9 N. Y. St. Rep. 587. The affidavit of the physician of a person who is charged with being an habitual drunkard cannot be read in support of an application for the appointment of a committee. In re Hoyt, 20 Abb. N. C. 162.

The privilege applies in criminal, as well as in civil, actions, so as to protect disclosures made to their physicians by persons charged with crime. People v. Murphy, 4 N. E. Rep. 326, 3 N. Y. Crim. R. 338. But, on an indictment for murder by poisoning, the physician who attended deceased when sick from the poison may testify as to the condition in which he found deceased. Pierson v. People, 79 N. Y. 424. Where a person applies to a physician for the means of procuring an abortion, the communication is not privileged. Hewitt v. Prime, 21 Wend. 79.

—— ACTION FOR FEES. A physician suing for his fees may testify as to the nature of the disease, and the character of the treatment. Kendall v. Grey, 2 Hilt. 300.

PERSONS DULY AUTHORIZED TO PRACTICE. Information obtained by a witness who was not licensed, or in any manner authorized to practice medicine at the time, is not privileged. Wiel v. Cowles, 45 Hun, 307.

—— PRESUMPTION ON APPEAL. Where testimony is excluded on the ground that it consists of privileged communications made by plaintiff to her physician, and no objection is made at the trial that the witness was not "duly authorized" to practice medicine, it will be presumed, on appeal, that he had the necessary license. Record v. Village of Saratoga Springs, 46 Hun, 448.

RELATION OF PHYSICIAN AND PATIENT—WHEN EXISTS. The relation exists where a physician attends a patient professionally on the request of another physician, and not of the patient himself. Reinhan v. Dennin, 9 N. E. Rep. 320. The relation to decedent is shown to exist where a physician states that he made the rounds of the hospital in which decedent was a patient, with the attending physician, "out of curiosity, to acquire information in interesting cases," and "assisted him [the attending physician] in making the examination of" decedent and "partly attended" her, but that he was not the physician attending decedent, or prescribing for her, and also that he was a physician in the hospital, and had charge of the different wards with the attending physician. Grossman v. Supreme Lodge, 6 N. Y. Supp. 821. The coroner sent two physicians to examine the injuries of a person who was confined in jail on a charge of murder. They informed defendant of the object of their visit, whereupon defendant, who knew them to be physicians, submitted to the examination, answered all the questions asked him, and requested one of the physicians to call the next day. Held, that the relation of physician and patient existed. People v. Stout, 3 Park. Crim. R. 670. It is not necessary that more than one interview with a physician should be had, or that the physician should prescribe, in order to establish the relation of physician and patient. Nor is it material that the patient went to the physician's office, instead of sending for him. Grattan v. Insurance Co., 24 Hun, 43; affirmed in 92 N. Y. 274.

WHEN RELATION DOES NOT EXIST. Physicians who were sent to the jail to examine a prisoner charged with murder, whose defense was mental irresponsibility, were properly allowed to testify against the prisoner as to his mental condition, as their visit in such case did not give rise to the relation of physician and patient. People v. Kemmler, 24 N. E. Rep. 9. A surgeon who, at the request of plaintiff's attending physician, examines plaintiff as to certain alleged injuries, is not thereby disqualified from testifying against plaintiff as to the existence of such injuries, where it does not appear that he was requested or expected to treat or prescribe for plaintiff, or that he did either. Henry v. Railroad Co., 10 N. Y. Supp. 508. In an action for personal injuries, a physician in defendant's employ can testify as to statements made to him by plaintiff of the circumstances of the accident when he called upon her for the sole purpose of procuring for defendant information about the injury, and the circumstances of the accident, and gave her no reason to believe that he intended to render her any professional services. Heath v. Railroad Co., 8 N. Y. Supp. 863. A physician who is called in by the attorney of testatrix, but without her consent, to examine her mental condition, and who, without prescribing for her, or being recognized by her as her physician, at her request, subscribes the will, may testify as to her sanity in proceedings for the probate of the will. In re Freeman, 46 Hun, 458. Where a physician testifies that he was not acting in a professional capacity when he obtained the information sought to be introduced, and the contrary is not shown, his evidence is admissible. The burden is on one who seeks to exclude evidence on that ground to show that it comes within the prohibition of the statute. Stowell v. Association, 5 N. Y. Supp. 233. The statute does not apply where the person claiming the privilege consulted the physician on behalf of a third person. Babcock v. People, 15 Hun, 347. The relation was held not to exist where a physician, who was county clerk, was asked by a person in his office to look at an eruption, which he did, without prescribing or making any charge therefor. Edington v. Insurance Co., 13 Hun, 543; reversed on another point in 67 N. Y. 185. The physician of the jail where defendant was confined who examined defendant, and kept him under observation, but never prescribed for him, nor attended him professionally, is not disqualified from testifying on defendant's trial as to his sanity. People v. Schuyler, 12 N. E. Rep. 783.

INFORMATION ACQUIRED WHILE ATTENDING A PATIENT. The privilege applies not only to information of a confidential nature obtained by the physician from his patient, but to information of every kind which may be obtained by him while attending his patient in a professional capacity. Information obtained by making a personal examination is privileged. Edington v. Insurance Co., 77 N. Y. 564; Grattan v. Insurance Co., 80 N. Y. 281; Reinhan v. Dennin, 9 N. E. Rep. 320. A physician may testify as to what he observed concerning a person's health after he ceased treating such person as a physician. Edington v. Insurance Co., 77 N. Y. 564. Plaintiff's attending physician cannot testify, in an action for personal injuries, as to whether plaintiff had a venereal disease. Sloan v. Railroad Co., 45 N. Y. 125. In an action for divorce, on the ground of adultery, communications by defendant to a physician in professional confidence, which communications would tend to establish the fact of adultery, are privileged. Hunn v. Hunn, 1 Thomp. & C. 499. Defendant, in an action on a life insurance policy, may prove by physicians that they attended the insured professionally, though the information acquired during such attendance cannot be disclosed. Numrich v. Supreme Lodge, 3 N. Y. Supp. 552.

INFORMATION NECESSARY TO ENABLE PHYSICIAN TO ACT. Where the attending physician of a testator is called as a witness in proceedings for the probate of the will, he may testify as to statements made to him by testator, where he also testifies that such statements were not necessary to enable him to act in a professional capacity. In re Halsey's Estate, 9 N. Y. Supp. 441. Conversations between a testator and his attending physician as to the sanity of testator's daughter does not involve information which was necessary to enable the physician "to act in that capacity," and may be admitted in evidence in proceedings to revoke probate of the will to explain testamentary provision in behalf of such daughter. Hoyt v. Hoyt, 20 N. E. Rep. 402. Defendant, who was indicted for manslaughter in assisting a woman to produce a miscarriage, went to a physician and asked him to come at once, as the woman was very sick. The physician said that he would like to know what the difficulty was, as it would enable him to provide himself with proper remedies, whereupon defendant stated what he and the woman had done. Held, that the communication to the physician was "necessary to enable him to act in that capacity." People v. Brower, 6 N. Y. Supp. 730. A physician who has attended a testatrix professionally, and visited her socially, is not competent to testify to his opinion of her testamentary capacity, formed from impressions received from the friendly visits, as such impressions necessarily relate to knowledge acquired professionally, and it is immaterial whether the information received from her, on which his impressions were based, was necessary to a proper treatment of her case. In re Darragh's Estate, 5 N. Y. Supp. 58; Brigham v. Gott, 3 N. Y. Supp. 518. A communication to his attending physician by a person who was injured at a railroad crossing by a passing train, that, as he approached the track, he heard some one hallooing to him, and saw a man swing his hat, but did not think where he was until the train was almost on him, is not privileged, as being necessary to enable the physician "to act in that capacity." Brown v. Railroad Co., 45 Hun, 439. Neither are statements

by a patient to his physician in regard to making a will, and the physician's advice on that subject, privileged on this ground. In re O'Neil's Estate, 7 N. Y. Supp. 197.

WHO MAY OBJECT. The objection may be taken in an action on a life insurance policy by the beneficiary therein, Grattan v. Insurance Co., 15 Hun, 74, 80 N. Y. 281; or by the patient's assignee, Edington v. Insurance Co., 67 N. Y. 185. See, also, Dilleber v. Insurance Co., 69 N. Y. 256. The privilege belongs to the patient, and, if he waives it, the physician cannot object. Johnson v. Johnson, 14 Wend. 637.

WHEN PRIVILEGE MAY BE CLAIMED. The party objecting to the testimony of a physician on the ground that it is privileged, must make it appear, unless it does so otherwise, that the testimony objected to is within the statute. Edington v. Insurance Co., 77 N. Y. 564. Where a physician has been called in by one who has just met with an accident, evidence as to his conversing with his patient, and making an examination of her, may be objected to as privileged, though it has not been shown that the information called for was such as was necessary to enable the witness to act in a professional capacity, as that is a necessary inference. Feeney v. Railroad Co., 22 N. E. Rep. 402; Reinhan v. Dennin, 9 N. E. Rep. 320; Grattan v. Insurance Co., 80 N. Y. 281; Edington v. Insurance Co., 67 N. Y. 185; Jones v. Railroad Co., 3 N. Y. Supp. 253. Where the physicians who attended testator are examined and cross-examined, without objection, in proceedings to revoke probate of the will, it is too late to raise the objection that the physicians disclosed professional communications. Hoyt v. Hoyt. 20 N. E. Rep. 402. To the same effect is McKinney v. Railroad Co., 10 N. E. Rep. 544.

WAIVER OF PRIVILEGE. Where plaintiff, in an action for personal injuries, testifies as to consultation with his physician concerning the injuries, he waives his privileges, under Code Civil Proc. § 836, which provides that the prohibition of section 834 shall "apply to every examination of a person as a witness unless the provisions thereof are expressly waived" by "the patient." Marx v. Railway Co., 10 N. Y. Supp. 159. The privilege is also waived where the patient's attorney calls the physician as a witness, and states that as his attorney he waives the privilege. Alberti v. Railroad Co., 23 N. E. Rep. 35. The introduction by plaintiff of evidence concerning a consultation between her physician and another physician as to her case is not a waiver of the objection to the admission of communications from her to her physician. Record v. Village of Saratoga Springs, 46 Hun, 448. In an action for personal injuries necessitating the amputation of plaintiff's leg, the privilege of a physician from testifying as to the condition of plaintiff's leg when he amputated it is not waived by the bringing of the action, and offering testimony to the fact that the leg was broken, nor by the fact that defendant, after the accident, sent its physician to plaintiff, and, at the trial, examined him fully in relation to plaintiff's injuries. Jones v. Railroad Co., 3 N. Y. Supp. 253. To the same effect is Hope v. Railroad Co., 40 Hun, 441; affirmed, without opinion, in 17 N. E. Rep. 873. Where information is acquired by a physician while attending a decedent professionally, the privileges cannot be waived by the executor of the decedent, if objected to by the other party. Westover v. Insurance Co., 1 N. E. Rep. 104. See, also, Dilleber v. Insurance Co., 69 N. Y. 256; Edington v. Insurance Co., 67 N. Y, 185; Loder v. Whelpley, 18 N. E. Rep. 874; Ferguson v. Insurance Co., 32 Hun, 306.