(15 Misc. Rep. 280.)

PEOPLE v. LEDWON et al.

(Superior Court of Buffalo, General Term. December 23, 1895.)

WITNESS—CREDIBILITY.

Though the trial judge characterized as involved in hopeless contradiction the testimony of a boy who was eight years old at his father's death, and who stated that two persons killed his father with his mother's consent, the testimony was admissible; no reason being apparent why the boy should lie to convict his mother, and as the jury were instructed to determine whether they would place any reliance upon said testimony, and to reject it if they were not satisfied that it was true beyond a reasonable doubt, and as the evidence, without the boy's testimony, satisfied the mind of defendants' guilt. White, J., dissenting.

Appeal from criminal term.

Defendant Joseph Ledwon was convicted of murder in the second degree, and defendant Anna Ledwon of manslaughter in the first degree. From a judgment of conviction, and orders denying motions for new trials made by said defendants, respectively, on the ground that the verdicts are contrary to law and against the evidence, and from an order denying motions for a new trial on the ground of newly-discovered evidence, defendants appeal. Affirmed.

Argued before TITUS, C. J., and WHITE, J.

Edward W. Andrews and Henry W. Hill, for appellants.

Daniel J. Kenefick, Dist. Atty., and James C. Quackenbush, for the People.

TITUS, C. J. My associate has written an opinion in this case, in which he arrives at the conclusion that the conviction of both of these defendants should be reversed, principally for the reason that the testimony of the boy witness, Borowiec, was submitted to the jury for their consideration in determining the question of the defendants' guilt. I cannot concur in the conclusion reached by him, that the verdict of the jury and the judgment of conviction should be reversed and set aside; and, as a failure to agree with him results in affirming the judgment of conviction, I desire to state briefly my reason for the conclusion reached by me.

The witness Wladeslaus Borowiec is the son of the defendant Anna Ledwon and the deceased, George Borowiec, and at the time of his death was eight years old; apparently not very bright or intelligent; timid and reserved, to the extent that it was difficult to obtain answers from him; brought up in surroundings of drunkenness and squalor; and, with no moral training, he is necessarily and naturally inclined to shield those to whom he is accustomed to look for protection and support. With such surroundings, and under such

conditions, if he was inclined to tell anything but the truth, it would be to tell a story which might seem to him most favorable to his mother, who was on trial for her life. At the time of the death of Borowiec the defendant Anna Ledwon, through her assertion of the suicide theory, led the coroner to believe that no crime had been committed, and consequently no investigation by a jury into the cause of Borowiec's death was made; and from that time up to the time of the trial this boy has constantly lived with or been surrounded by friends of the defendant, who insisted that Borowiec killed himself. According to his own statement, threats were made against him in case he should testify that the defendants killed his father. If it is not true that these defendants assisted in killing Borowiec, I am at a loss to see the motive for the boy's story. No reason is suggested, and none is apparent, why he should persist in telling a lie for the purpose of convicting his mother of this crime. It is easy to understand why a boy of his age, and immature as he is, should try to shield his mother; but why he should want to convict her by telling a falsehood is past comprehension, and no reason is shown for it. But, on the other hand, there is abundant reason to explain why he should wish to screen his mother. The trial judge carefully presented the case to the jury, and cautioned them against placing too much reliance in this boy's story. This evidence was characterized as "involved in a hopeless contradiction," and in submitting it to the jury the court said:

"You are to take this boy as you saw him here,—his age, his appearance upon the stand, his inability to give this in a detailed statement; and you are first to determine, is he of that degree and order of intelligence that he is capable of determining in his own mind that he must tell the truth, and would be liable to be punished if he did not tell the truth, and, consequently, will you place any reliance upon his testimony, which the court submits to you under the peculiar circumstances of this case?"

After calling their attention to his contradictory statements, the court told the jury to examine the boy's surroundings, to see if he was in position to have seen what he claimed he did, and, if they were not satisfied that his story was true beyond a reasonable doubt, then they should reject it, and give it no force at all.

Aside from the evidence of the boy, one is led to the conclusion that Borowiec was brutally murdered during their drunken debauch, stimulated thereto by excessive drink, prompted by a desire to rid the wife and her paramour of an insuperable obstacle, in the person of the husband, to their undisturbed cohabitation. The boy was present, and, while not knowing the motive of the act, as he lay in his bed, was powerfully impressed with the fact that his father was being killed by these defendants and Zawaczki; and while, undoubtedly, efforts have been made to impress upon his mind the thought that his father killed himself, yet his telling of the scuffle, and of their carrying him out, impresses me with the conviction that he told the truth in that respect. After the severe criticism of the boy's testimony by the trial judge, and after being told of the importance of a careful scrutiny of his testimony, the jury concluded he was telling the truth; and I think, under the instruc-

tions from the court as to their duty in weighing his testimony, they had the right to receive it and act upon it, and their conclusion, I believe, is fully warranted. It may be truthfully said that this evidence is not of the most satisfactory character, but when crime is committed amid such surroundings, where all present are more or less responsible and interested in suppressing the truth, the best and most satisfactory evidence cannot be obtained, and the witnesses must, from the nature of the situation, lack those high social and moral qualities which appeal most strongly to us; but, nevertheless, when the people have produced the best evidence there is, and it is legally sufficient to warrant a verdict of guilty, if the jury are satisfied from it beyond a reasonable doubt, their finding should not be disturbed. Especially is this the case where the evidence, without the testimony of the boy, morally satisfies the mind of the guilt of the defendants. In this view of the case, I am inclined to think that the evidence was properly submitted to the jury, and that the judgment of conviction should be affirmed.

Judgment affirmed.

WHITE, J. (dissenting). The defendants were convicted of having killed one Borowiec, in his own house, on September 11, 1890. Borowiec and the defendant Anna Ledwon were then husband and wife. The defendant Joseph Ledwon had at different times prior to the death of Borowiec occupied a room in his house, for which he paid rent to Anna. He purchased and paid for material for food, and the defendant Anna Ledwon cooked and prepared it for his use, and he paid her for such services. That is a common way of living among people of their class in Buffalo. The evidence in the case justifies the inference that at the time, and for quite a period of time prior to Borowiec's death, Joseph and Anna Ledwon had been unduly intimate; and, in the light of all the facts and circumstances of the case, it may fairly be said that the defendants are shown to have had an adequate motive for the commission of the crime of which they have been charged, and of which they have been convicted. Stephens v. People, 19 N. Y. 549. It is strenuously urged by the counsel for the defendants that the people failed to establish the corpus delicti of the offense charged by competent and sufficient evidence upon the trial. The death of Borowiec was proven by direct evidence, and so was the fact that his death was caused by the criminal agency of Joseph Ledwon, if the testimony of the boy Wladeslaus Borowiec, a son of the deceased, was properly submitted to the jury, and is sufficient to establish the fact it was intended to. This witness testified directly to the fact that he saw Joseph and one Zawaczki kill the deceased. For the purpose of this appeal, I assume that this witness, who was eight years old when his father died, understood and appreciated the nature of the oath under which he testified, and was a competent witness. The trial court, in a carefully written opinion on denying the motion of the defendants for a new trial, says, in speaking of the evidence of this boy upon the trial:.

"It was not satisfactory testimony, it is not satisfactory testimony now, but it supplied one missing link. The whole case, taken together,—all the evi-

dence,—tends to bring the mind to the conviction that these defendants were guilty of the crime with which they were charged, and that independent of the testimony of the boy; but the whole evidence, taken together, would have been insufficient to convict the defendants, were it not for the link of testimony supplied by the boy's evidence."

On the trial the court charged the jury, among other things, that, unless the testimony of the boy satisfied them beyond a reasonable doubt that he saw Joseph Ledwon and Zawaczki kill his father, they should reject such testimony, and give it no force at all. The people claim that the jury was justified in believing that part of the testimony of the boy which tended to prove acts of violence by Joseph and Zawaczki upon the body of his father, which caused his death, and that Anna, the mother of the witness, was present and consenting to the criminal acts. It is insisted by the people that the evidence was proper for the consideration of the jury, under the rule prescribed by section 714 of the Penal Code, and adjudged cases which hold that when it appears that when a witness has sworn differently upon the same point upon different occasions, or where he makes contradictory statements concerning the same matter while testifying in a given case, his testimony is not to be stricken from the case, nor wholly excluded from consideration by the jury, but remains in the case, to be considered, in connection with the other evidence, under such prudential instructions as may be given by the court. This rule has no application to a case where the testimony given by a witness is, as the trial court correctly pronounces the testimony of this boy Wladeslaus to be, "in a hopeless contradiction, \* \* \* confession that he has not only testified untruthfully upon this trial, but that he testified untruthfully upon another trial involving this transaction." Where, in short, the testimony is utterly and absolutely contradictory, unreconcilable, inconsistent, unexplainable, and where there is no way of determining beyond a reasonable doubt, or with reasonable certainty, what part is false and what part is true, the rule contended for by the people does not apply, and such seems to be the case before us. The only safe way, in such a case, is to apply the maxim, "Falsus in uno, falsus in omnibus."

After this boy Wladeslaus had been examined at length by the district attorney, as a witness for the people, and cross-examined by the defendant's attorney, he was taken into a room and questioned in private by the assistant district attorney. The district attorney thereupon came into court with the boy, and stated to the court, in the presence and hearing of the jury, what he claimed the boy had said to him in private, and asked permission to replace the boy upon the stand as a witness, for the avowed purpose of having some of those statements by the boy made to the court and jury, as evidence in the case. Leave was given, and the boy again took the stand as a witness for the people. To this the defendants objected, and excepted to the ruling of the court. In his statement to the court in asking leave to recall the boy, the assistant district attorney stated, among other things, that a brother of the defendant Joseph Ledwon was imprisoned in Limestone Hill reformatory for stealing

v.36 N.Y.S. no.5—50

coal; that the boy, up to the time he was placed on the stand (as a witness in this case, presumably), had never, to any one in the district attorney's office, made any statement other than that which he made before the grand jury, and which was, in substance, as he had asked the boy while testifying as a witness in this case. The boy had denied that he so testified before the grand jury. The claim of the district attorney was that the boy testified before the grand jury that his bed was in the same room they choked his father in; that Ledwon and Zawaczki were choking him, and his mother was kneeling on his breast. It was stated by the district attorney, as a fact, that the boy testified before the grand jury to the facts as he (the district attorney) claimed them to be. That statement by the district attorney contains the only language used by any person on the trial indicating that Anna Ledwon actively participated in the killing of her husband. The fact indicated by the statement of the district attorney as to Anna Ledwon's active participation in the crime was disputed by the boy, who was the only witness who spoke concerning it. His evidence is that the killing was done by Joseph and Zawaczki, and that his mother took no active part in it. The statement so made by the district attorney, in my judgment, may well have been, if it was not in fact, necessarily prejudicial to the defendants. People v. Greenwall, 115 N. Y. 526, 22 N. E. 180; People v. Wood, 126 N. Y. 269, 27 N. E. 362. If it should be held eventually in this case that the boy Wladeslaus is shown by his testimony to be incompetent as a witness, for lack of understanding and intelligence, the result would be the same as it must be as the case stands. A human being should not be deprived of liberty on such testimony as that given by this boy, and it is conceded that without it a conviction would not have been warranted. See People v. Quick (Mich.) 25 N. W. 302; Hardtke v. State (Wis.) 30 N. W. 726.

These views necessitate a reversal of the judgment of conviction, as to both of the defendants, without reference to the effect, if any, which ought to be given to the affidavits of good character used upon the motion for a new trial on the ground of newly-discovered evidence.