WILLIAM J. V. CROSSE, Appellee, *vs.* THE SUPREME LODGE KNIGHTS AND LADIES OF HONOR, Appellant.

*Opinion filed April 18, 1912.*

1. CONTRACTS—*it is the function of courts to enforce contracts as made.* Parties competent to contract may enter into such agreements with each other as they see fit, and it is the purpose of the law and function of the courts to enforce their contracts if not in violation of law or opposed to public policy.

2. SAME—*when construction of contract is a question for the court.* Where a contract is in writing and there is no question involving proof as to the construction put upon it by the parties, the question of its construction is for the court.

3. BENEFIT SOCIETIES—*when statements will not be regarded as warranties.* If there is anything in the application or benefit certificate tending to show that the answers and statements were not intended to be regarded as warranties, such answers and statements as are not material to the risk and are honestly made in the belief that they are true present no obstacle to a recovery on the certificate even though they are untrue.

4. SAME—*rule where statements are expressly declared to be warranties.* Where an application for life insurance is expressly declared to be a part of the contract and the statements therein contained are warranted to be true such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the contract, however innocently the statements may have been made.

5. SAME—*what answer to question in application is material to the risk.* The answer, "Seven years," given to a question as to how long it had been since the applicant was attended by a physician or had professionally consulted one, is material to the risk and does not relate to a matter of opinion or judgment concerning which there might be a mistaken but honest belief.

6. SAME—*what question in application is not ambiguous.* The question, "How long since you were attended by a physician or professionally consulted one?" asked of an applicant for membership in a benefit society, is not ambiguous, but can only mean how long had it been since the applicant had last been attended by a physician or consulted one.

7. SAME—*language cannot be perverted to raise an ambiguity.* The rule that ambiguous language in an insurance contract must be construed most strongly against the insurer does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.

8. SPECIAL FINDINGS—*general verdict inconsistent with special findings cannot stand.* A general verdict against a benefit society for the amount of the benefit certificate cannot stand where the jury found specially that a fact material to the risk and within the knowledge of the member was contrary to the answer which she gave in her application.

APPEAL from the Branch "C" Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. CALVIN DE-WOLF, Judge, presiding.

ASHCRAFT & ASHCRAFT, (E. M. ASHCRAFT, of counsel,) for appellant.

EDMUND S. CUMMINGS, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The Appellate Court for the First District affirmed a judgment for $1000 recovered by the appellee in the county court of Cook county against appellant, a fraternal beneficiary society, upon a benefit certificate issued by it to Mary

Ellen Crosse, the wife of appellee, payable to him upon her death while a member of the society in good standing, and granted a certificate of importance and an appeal to this court.

The declaration contained one count, and set out the certificate and alleged the death of Mary Ellen Crosse while a member of the society in good standing. The defendant pleaded the general issue and several special pleas, the third of which alleged that the certificate was issued upon condition that the answers made to a medical examiner, upon the faith of which it was issued, were true and should be treated as warranties; that the insured agreed that she warranted such answers to be true and any untrue statement or answer should forfeit all rights under the certificate, and that she made a false answer as to her having been attended by a physician or having professionally consulted one within five years prior to the examination. There was a general replication to this plea denying that the answer was false or untrue, and a trial by jury resulted in a verdict for the amount of the certificate. The jury returned with the general verdict a special finding upon an interrogatory submitted to them, as follows: "Did the said Mary Ellen Crosse, at any time within five years before the signing of the medical examination in evidence, professionally consult a physician?—Answer, Yes." The defendant moved for judgment on the special finding, but the court overruled the motion, and also a motion for a new trial, and entered judgment on the verdict.

Mary Ellen Crosse, in her application for the certificate, warranted her answers to the questions in the medical examination to be correct and true, and contracted and agreed that any untrue statement or answer should forfeit the rights of herself and family to all benefits under the certificate. Among other questions propounded and answers given in the medical examination were the following:

Q. "How long since you were attended by a physician or professionally consulted one?

A. "Seven years.

Q. "For what disease?

A. "Confinement.

Q. "Give name and residence of physician.

A. "Dr. Quine, city.

Q. "Are you in good health?

A. "Yes.

Q. "Do you usually have good health?

A. "Yes."

It was proved and not denied that a child was born to Mrs. Crosse in 1896,—seven years prior to her application,—but that Dr. Quine did not attend her at that time nor in that year. He attended her as her physician in 1897, and upon examination found that she had congenital malformation of the heart and great enlargement of that organ, and great enlargement of the liver resulting from the imperfection of the heart, and difficulty of breathing. He attended her six days in April, 1897, and six days in May, 1900, and again five days in October and November, 1901. He also attended her in the year 1903,—the year the examination was made,—and each year thereafter up to her death, and was her physician at the time of her death. During all this time she had the same malformation of the heart, with varying degrees of the disorder, and difficulty of breathing, and with occasional long intervals of comfort and freedom from distress. Dropsy resulted from the malformation and gradual failure of the heart, and the immediate cause of her death, which occurred in 1907, was dropsy and congestion of the lungs, the remote cause being the congenital malformation of the heart. A number of witnesses testified that they observed her from time to time and saw her at work; that her breathing seemed natural and that they never saw anything of any heart difficulty, but there was no dispute of the fact that she had consulted

Dr. Quine and been attended by him as a physician as above stated.

Parties competent to contract are at liberty to enter into such agreements with each other as they see fit, and it is the purpose of the law and the function of the courts to enforce their contracts. Accordingly, the rule established in this State is, that where an application for life insurance is expressly declared to be a part of the policy and the statements therein contained are warranted to be true, such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the policy however innocently the statements may have been made. But warranties are not favored in the law, and if there is anything to be found in the application or certificate tending to show that the answers and statements were not intended by the parties to be regarded as warranties, such answers or statements as are not material to the risk and were honestly made in the belief that they were true will not present any obstacle to recovery. If such a construction may be reasonably given to the contract the statements will be considered as mere representations notwithstanding the policy states that they are to be deemed warranties, and if not material will not be available as a defense. (*Continental Life Ins. Co.* v. *Rogers*, 119 Ill. 474; *Provident Life Society* v. *Cannon*, 201 id. 260; *Minnesota Life Ins. Co.* v. *Link*, 230 id. 273.) In this case it was agreed that the answers made to the medical examiner should be warranties and that any false or untrue statement or answer should operate to forfeit the rights of the beneficiary. There is nothing in the contract which would give any room for interpreting it differently from the language employed in it, and counsel seeking to sustain the judgment do not contend that such is the case. In any event, the answers made were material to the risk and did not relate to a matter of opinion or judgment concerning which there might be a mistaken but honest belief.

The argument in support of the rulings of the court is, that the answer was, in fact, true, upon the ground that the question was ambiguous, and Mrs. Crosse might fairly have interpreted it as calling for the first time when she was attended by a physician or professionally consulted one, and as so understood her answer was true. Anything appearing in an insurance contract which is ambiguous or of doubtful meaning is to be interpreted against the insurer, and counsel says that from the language used Mrs. Crosse might reasonably understand that the defendant wanted to know how long it had been since she began to be attended by a physician or professionally consulted one, and as a matter of fact the first time was at the birth of her child. Inasmuch as Dr. Quine did not attend her at that time, it is contended that she might understand the second question as calling for the name and residence of the physician who was attending her at the time of her application, and that Dr. Quine was then attending. We are wholly unable to agree with that argument. The first proposition, that the question was ambiguous and might fairly be understood as calling for the first time the applicant had been attended by a physician, is sustained by the decisions in two cases. (*Moore* v. *Connecticut Mutual Life Ins. Co.* 3 Ont. App. (Up. Can.) 230; *Stewart* v. *Equitable Life Ass'n,* 110 Iowa, 528.) We are unable to apply the illustrations in the latter case to the question and can see no reasonable ground for doing so. We can see no similarity between an inquiry how long a time has elapsed since a person was attended by a physician or consulted one professionally, and a question how long since a person became addicted to the use of tobacco or intoxicating liquors or formed a habit or adopted a custom of any kind. The purpose of all the questions propounded, of which there were many, was to ascertain the state of health of Mrs. Crosse, and there could be no reason for inquiring when she became ill and required the services of a physician. The only conceivable purpose

of the question was to ascertain how long a time had elapsed since she had required the services of a physician, to enable the defendant to judge of the state of her health. In the following cases the same question was asked and was considered by the courts as an inquiry how long it had been since the applicant had last consulted a physician or had been treated by one: *Mengel* v. *Insurance Co.* 176 Pa. St. 280; *Roche* v. *Supreme Lodge Knights of Honor,* 21 Hun, (App. Div.) 599; *Aloe* v. *Mutual Reserve Fund Life Ass'n,* 147 Mo. 561; *Numrich* v. *Supreme Lodge Knights of Honor,* 3 N. Y. Supp. 552; *Boland* v. *Industrial Benevolent Ass'n,* 74 Hun, 385; *Hubbard* v. *Mutual Reserve Fund Life Ass'n,* 100 Fed. Rep. 719; *Life Association of America* v. *Edwards,* 159 id. 53; *Mutual Reserve Fund Life Ass'n* v. *Cotter,* 72 Ark. 620. The answer of the applicant in one case was, not since childhood; in another, not since over thirty years, and in another, not for two years, which shows the natural and ordinary understanding of the meaning of the question. The fact that in those cases the question of ambiguity was not raised, shows that it did not occur to anyone that there was any ambiguity, and we do not see how there could be any. The rule that ambiguous language is to be construed most strongly against the insurer does not authorize a perversion of language or the exercise of inventive powers for the purpose of creating an ambiguity where none exists. The argument on the second proposition, that the question as to the name and residence of the physician called for the name of the one who was attending Mrs. Crosse at the time of the application, is repelled by her statement in the application that she was then in good health and necessarily was not then being attended by any physician.

The contract was in writing. There was no question involving proof as to the construction put upon it by the parties, or any other matter which would take it out of the rule that the construction of it was for the court as a mat-

ter of law. (*Illinois Central Railroad Co.* v. *Foulks,* 191 Ill. 57; *Chickering* v. *Bastress,* 130 id. 206; *Walker* v. *Freeman,* 209 id. 17; *Dunn* v. *Crichfield,* 214 id. 292; *Danziger* v. *Pittsfield Shoe Co.* 204 id. 145.) The defendant asked the court to instruct the jury that if they believed, from the evidence, that Mrs. Crosse during the year 1901 professionally consulted Dr. Quine as to her physical condition or ailments and that he then and there treated her, the verdict should be for the defendant. The court modified the instruction by making it a condition that Mrs. Crosse, in her application, meant by her answer that it had been seven years since she last professionally consulted a physician or was treated by one, which was equivalent to saying that if she meant something else the verdict was not to be for the defendant. As the question was not of doubtful meaning the court erred in adding the qualification making the rights of the defendant depend upon what the jury might conclude she meant by her answer. The court also refused an instruction stating as a hypothesis the facts proved and not disputed concerning the attendance of Mrs. Crosse by Dr. Quine as her physician and applying the rule of law already stated to such hypothesis, and in this the court erred.

Section 79 of the Practice act provides that when a special finding of fact is inconsistent with the general verdict the former shall control the latter and the court may render judgment accordingly. The interrogatory in this case related to a material fact within the knowledge of the applicant for the insurance, and the jury by their finding found the fact contrary to her answer. The finding was inconsistent with the general verdict and the court erred in refusing to enter judgment on that finding.

The judgment is reversed and the cause is remanded to the county court, with directions to enter judgment for the defendant on the special finding of the jury.

*Reversed and remanded, with directions.*