## Frank Gunter, Appellee, v. Mystic Workers of the World, Appellant.

1. INSURANCE, § 858*—*when jurisdiction obtained in action on benefit policy.* Under section 7 of the Practice Act (J. & A. ¶ 8544), courts of record of the county of plaintiff's residence have jurisdiction of an action on a benefit insurance policy, and process may issue to the county in which the insurance company has its head office for service; but it does not follow that other courts are deprived of jurisdiction to hear and determine such a suit.

2. INSURANCE, § 858*—*when jurisdiction of corporation obtained by City Court.* Section 8 of the Practice Act (J. & A. ¶ 8545), providing that an incorporated company may be served with process by leaving a copy thereof with its president, if he can be found in the county in which the suit is brought, and if he shall not be found in the county, then by leaving a copy of the process with any agent of the company found in the county, is broad and inclusive and is sufficient to give a City Court jurisdiction of an insurance corporation on which service within its territorial limits has been obtained in the manner provided by statute, even though neither plaintiff nor defendant are residents of such county.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

3. INSURANCE, § 904*—*when falsity of answers as to health in medical examination of insured shown.* Evidence *held* sufficient to show that the statements made by insured in his medical examination as to his good health were untrue, that he had coughed for some considerable time prior to the issuance of the certificate, and that he had had hemorrhages on several occasions prior thereto.

4. INSURANCE, § 753*—*what are warranties vitiating policy where untrue.* Statements made by an insured in his medical examination that he had been in good health, and warranted in his application, which was a part of the benefit certificate, to be true, are warranties, and, if not true, vitiate the policy.

Appeal from the City Court of Marion county; the Hon. W. O. POTTER, Judge, presiding. Heard in this court at the March term, 1918. Reversed with finding of fact. Opinion filed November 1, 1918.

CHARLES E. STURTZ and GEORGE R. STONE, for appellant.

FOWLER & DUTY, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

Appellee recovered a judgment for $714.58 against appellant in an action in assumpsit in the City Court of Marion. To reverse said judgment this appeal is prosecuted.

The declaration consisted of one special count in the usual form based on a benefit certificate of $1,000, set out *in hæc verba,* together with the consolidated common count. Appellant entered a limited appearance for the purpose of filing a plea to the jurisdiction of the court. The grounds alleged in the plea as reason why said City Court did not have jurisdiction are: First, that the cause of action did not arise within the corporate limits of the City of Marion; second, that appellee was a resident of the county of Saline and not a resident of the City of Marion in the county of Williamson, and that the appellant had its principal place

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of business in the City of Fulton, in Whiteside county. A demurrer filed by appellee to said plea was by the court overruled. Thereupon, appellant filed seven special pleas. Replications were filed to these special pleas, all of which joined issue with the exception of the replication to the third special plea, which said replication averred new matter, and to this four rejoinders were filed. Appellee filed a traverse to the first, second, and third rejoinder and a surrejoinder to the fourth rejoinder. Without going into the detail of the pleadings it is only necessary to say that the plea filed on limited appearance raised the question as to whether the City Court of Marion had jurisdiction of the case; the first, second, fourth, fifth, sixth and seventh pleas and the issues joined thereon raised the question as to whether or not Elroy Gunter, the assured in his application for insurance, misrepresented the condition of his health, and as to whether or not the representations made amounted to warranties or, if not warranties, were they misrepresentations of fact material to the question of the granting of said insurance.

The third plea, the rejoinder thereto and the surrejoinder raised the question as to whether or not Elroy Gunter tendered his dues and assessment for the month of July, 1917, to the secretary of the local chapter, and if he did not do so within the time specified by the by-laws, was there a custom or usage of such secretary for the accepting of the payment of the dues after the time designated in the by-laws that would amount to an estoppel upon the appellant to claim a forfeiture on the benefit certificate.

In support of its contention that said City Court did not have jurisdiction of the subject-matter of this proceeding, appellant cites section 7 of the Practice Act (J. & A. ¶ 8544), which provides among other things that: "The courts of record of the county wherein the plaintiff or complainant may reside shall

have jurisdiction of all actions hereafter to be commenced by any individual against any insurance company, either incorporated by any law of this State, or doing business in this State. And all process issued in any cause commenced in the county wherein the plaintiff may reside, wherein an individual may be plaintiff or complainant and any such company defendant, may be directed to any county of this State for service and return.'' It is insisted by appellant that inasmuch as section 7 gives to the courts of record, in the county where the plaintiff suing an insurance company may reside, jurisdiction, with a provision for sending process to the other counties of the State, that therefore such courts are the only courts having jurisdiction to hear and determine the case.

Appellant also cites in support of said contention section 6 of the Practice Act (J. & A. ¶ 8543) which provides: ''It shall not be lawful for any plaintiff to sue any defendant out of the county where the latter resides or may be found, except in local actions, and except that in every species of personal actions in law where there is more than one defendant, the plaintiff commencing his action where either of them resides, may have his writ or writs issued directed to any county or counties where the other defendant, or either of them, may be found.'' Appellant also calls attention to section 1 of the Act in relation to courts of record, being section 240, chapter 37, of Hurd's Revised Statutes (J. & A. ¶ 3289), which provides: ''That the several courts of record now existing in and for cities, and such as may hereafter be established in and for any city in this State, shall severally be styled 'The City Court of (name of city),' and shall have concurrent jurisdiction with the circuit court within the city in which the same may be in all civil cases both law and chancery and in all criminal cases arising in said city, and in appeals from justices of the peace of said city, and the course of procedure and practice in such

courts shall be the same as in the circuit courts, so far as may be." Appellant contends that the jurisdiction given to city courts is limited, in civil cases, to causes of action that arise within the territorial limits of the city where such court may be located, and that the cause of action sued on in this case accrued in the county of Fulton, where the principal office of appellant company is located, for the reason that it was in the head office of said company in Fulton, Whiteside county, that the claim for insurance filed by appellee was refused. Appellant being a resident of Saline county, courts of record of that county would have had jurisdiction of the subject-matter of this proceeding, and process issued by the courts of record of that county could have been sent to Whiteside county, or any other county within the State for service. It does not necessarily follow, however, that because section 7 of the Practice Act (J. & A. ¶ 8544) gives to courts of record of the county where the plaintiff resides, jurisdiction in suits brought on an insurance policy, that it takes from all other courts jurisdiction to hear and determine suits of this character. No question is raised by appellant that the service had in this case was not sufficient to give the said City Court jurisdiction of the appellant company, provided said City Court had jurisdiction of the subject-matter of the proceeding.

Section 8 of the Practice Act (J. & A. ¶ 8545) provides: "An incorporated company may be served with process by leaving a copy thereof with its president, if he can be found in the county in which the suit is brought. If he shall not be found in the county, then by leaving a copy of the process with any clerk, secretary, superintendent, general agent, cashier, principal, director, engineer, conductor, station agent, or any agent of said company found in the county." This section is broad and inclusive, and in our judgment is sufficient to give to a City Court jurisdiction

of any corporation on whom service within its territorial limits has been obtained in the manner provided by statute.

In *Peoria Ins. Co. v. Warner,* 28 Ill. 429, the Supreme Court at page 432 says: "The single question presented by this record arises out of the following facts: The plaintiffs in error are a corporation established by the laws of this State, at Peoria, in the county of Peoria, to transact the business of marine and fire insurance. Its principal officers reside at Peoria, where it has its principal place of business; and it has also an office in the City of Chicago, in Cook county, and an agent residing there to attend to its business. The action was brought in the Superior Court of Chicago, by the defendant, who is a resident of Milwaukee, in the State of Wisconsin, on the record of a judgment which he had recovered against the plaintiffs in the County Court of Milwaukee.

"To the action of the Superior Court, the plaintiffs pleaded to the jurisdiction of the court, setting out in the plea the above facts.  *  *  *  The error assigned, is this judgment on the demurrer, and the only question is, had the Superior Court of Chicago jurisdiction of the case? The plaintiffs in error insist that it had not, for the reasons that neither the plaintiffs nor the defendant resided there—that the cause of action did not accrue there, nor was the debt made payable there. The action of debt is a transitory action, and can be brought in the court of any county in which the defendant may be found." The court then quotes the Act of 1853, which is, in effect, the same as section 8 of the present Practice Act (J. & A. ¶ 8545), and then at page 433 says: "This act being remedial in its character, ought to receive the most liberal interpretation. No injury can result from it to a corporation thus summoned, for the reason that the agent will not fail to give the necessary notice to his principal, so that he may prepare his defense, if he have one. Such an interpre-

tation we endeavored to give this law, in the case of *Mineral Point R. Co. v. Keep,* 22 Ill. 9, and also in the case of *Rock Island R. Co. v. Fell,* 22 Ill. 333. There is no limitation in the act, restricting it to the principal place of business of the company, but it is sufficiently comprehensive to embrace any agent, where he may be found, in any county, provided the president of the company does not reside in the county where the process is issued." This case was cited and approved in the case of *Stephenson Ins. Co. v. Dunn,* 45 Ill. 211.

In *Knickerbocker Ice Co. v. Leyda,* 128 Ill. App. 66, the Appellate Court of the Second District, by Justice Vickers, in discussing the question of what constitutes "the subject-matter," when the question of jurisdiction of a City Court arises, on page 68 says: "The defendant filed in court a motion to dismiss the case on the ground that the cause of action did not arise within the City of Aurora and that therefore the City Court of Aurora had not jurisdiction of the subject-matter of the suit. If the court did not have jurisdiction of the subject-matter of the suit the judgment entered by it is a nullity and should be reversed without remanding the cause. Want of jurisdiction over the person may be waived, but lack of jurisdiction over the subject-matter cannot be waived and is fatal to the validity of the judgment on appeal. We are of opinion that the City Court of Aurora did have jurisdiction of the subject-matter and that the motion to dismiss was properly denied. *Hurcules Iron Works v. Elgin, J. & E. Ry. Co.,* 141 Ill. 491."

In the case of *Security Ins. Co. v. Slack,* 183 Ill. App. 579, this court specifically held that the fact that section 7 of the Practice Act gave to courts of record of the county in which a plaintiff may reside jurisdiction of all actions commenced by individuals against any insurance company, did not take from a City Court jurisdiction to entertain an action against

an insurance company to recover on a policy of insurance in the county where the insured company might be located, or could be found. This court at page 581 says: "To sustain the claim that the City Court of East St. Louis had no jurisdiction in this class of cases, appellant refers to paragraph 7, chapter 110 of the Revised Statutes (J. & A. ¶ 8544) [after quoting said section further says]: Appellant insists that the City Courts are not 'courts of record of the county' within the meaning of this act and rely upon the case of *Ladies of Maccabees of the World v. Harrington*, 227 Ill. 511, as sustaining this doctrine. It is true that certain language is used in that case, which appears in general terms to support appellant's position, but a careful reading appears to us to demonstrate that it is not intended to apply to the question here raised by appellant. * * * Here the suit was commenced by a resident of the city and service was had on appellant within the city limits, and it was not necessary to take advantage of the statute to issue process for service outside of the city. Section 1 of our statute, in reference to City Courts (J. & A. ¶ 3289), provides that they 'shall have concurrent jurisdiction with the circuit courts within the city in which the same may be, in all civil cases, etc.' We are of the opinion that in cases such as this, where the plaintiff resides and the defendant is served in the city where the court is located, the City Court has jurisdiction, and that the court below in this case properly refused to dismiss the suit for want of jurisdiction." In view of the foregoing authorities, we hold that the City Court of Marion had jurisdiction of the subject-matter of this proceeding, and that it did not err in sustaining a demurrer to the plea to the jurisdiction.

It is next contended by appellant that the verdict of the jury is against the manifest weight of the evidence. The record discloses that Elroy Gunter made application for membership and insurance with appel-

lant in January, 1916. The benefit certificate was delivered to him in February, 1916. Thereafter on August 29, 1917, said insured died. The insured in his application for said benefit certificate warranted his answers to the questions in the medical examination to be literally true, the language of the application being as follows: "I have verified each and every one of the answers and statements in this application for membership * * * and adopt them as my own, whether written by me or not, and declare and warrant that they are full, complete and literally true, and I agree that the exact, literal truth of each, shall be a condition precedent to any binding contract issued upon the faith of such answers and statements. I further agree that these answers and statements shall form the basis of the contract between me and the Mystic Workers of the World, and are offered by me as a consideration for the contract applied for, and are hereby made a part of any Benefit Certificate that may be issued on this application, and shall be deemed and taken as a part of such Certificate. * * * And I further agree that if any answer or statement in this application is not literally true, or if I shall fail to comply with and conform to any and all of the laws of said Mystic Workers of the World, whether now in force or hereafter adopted, that my Benefit Certificate shall be void."

Among other questions propounded to the insured and the answers given thereto by him in the medical examination are the following: "Are you now of sound body, mind and health, and free from disease or injury?" "Yes." "Are you now in good health?" "Yes." "Have you within the last three years used any patent or proprietary medicine?" "No." "Are you subject to, have you had, or have you now, any of the following diseases: Asthma?" "No." "Spitting or coughing of blood?" "No." "Difficulty in breathing?" "No." "Tuberculosis?" "No." "Consumption?" "No." "Cough (Habitual)?" "No."

The acceptance slip, signed by the applicant on the 14th day of February, 1916, and which constituted a part of the contract sued upon, among other things contained the following provision: "I hereby warrant that I am in good health and free from disease, and have been in good health and free from disease continuously since the date of my medical examination for admission as a member of this society."

Section 92 of the constitution and by-laws of defendant provides in substance: "That wherever the words 'application for membership' " or their equivalent are contained they shall be held to mean, include and cover the medical examination and all that is required to be in writing by an applicant, or for him, to complete membership.

Section 128 provides: "That the society shall not be liable to a member or the beneficiary of any member on account of death caused directly or indirectly by reason of any disability or death which shall be caused in whole or in part by any diseased condition or injury existing at the time such member becomes a member of the Order."

The evidence in the record tends strongly to the effect that for some 4 or 5 years prior to his death, Elroy Gunter was in poor health and was practically unable to perform any labor. Numerous witnesses on behalf of appellant testified that for the last 4 or 5 years prior to insured's death, and for at least 2 or 3 years prior to the date of the certificate sued on, the insured would have coughing spells, both in the daytime and in the night, and certain of the witnesses testified that insured had hemorrhages prior to the date of the application, and also certain of said witnesses testified that he had stated to them that he had had hemorrhages. Dr. J. F. Blanchard, a witness on behalf of appellant, testified that he made a professional visit on the insured some 4 or 5 years prior to the date of the trial, and which would have been some 2

or 3 years prior to the date of the certificate sued on, and found him suffering with an active hemorrhage of the lungs; that the hemorrhage was such at the time he did not try to interrogate him as to what brought it about; that he called on him the following day and that he was still suffering with an active hemorrhage; that he did not see him any more after that time. This witness also testified he had treated the insured some 15 years prior thereto for typhoid fever.

The witness Taylor Deaton testified that the insured stayed at his house in 1914 and 1915; that "he coughed every night some. A right smart at night, not so bad in the day; mostly at night. He took no treatment for it, but bought patent medicine, first one kind and then another he tried."

Without referring specifically to the testimony of other witnesses who testified in connection with the matter of insured's health, it is sufficient to state that it satisfactorily appears from the evidence of these witnesses that he had coughed for some considerable time prior to the issuance of the certificate, and that he had had hemorrhages on several occasions prior thereto, one some 14 or 15 years prior to his death.

There was no evidence in the record contradicting the testimony of the foregoing witnesses. Under the holding of the Supreme Court and of the Appellate Courts of this State, the statements made by the insured in his medical examination were warranties, and, unless substantially true at the time made, would vitiate the certificate. *Crosse v. Supreme Lodge, Knights and Ladies of Honor*, 254 Ill. 80; *Spence v. Central Accident Ins. Co.*, 236 Ill. 444; *Peckham v. Modern Woodmen of America*, 151 Ill. App. 95; *Harvick v. Modern Woodmen of America*, 158 Ill. App. 570; *Order of Foresters v. Knowles*, 113 Ill. App. 641.

In *Crosse v. Supreme Lodge, Knights and Ladies of Honor, supra,* at page 84, the court says: "Parties competent to contract are at liberty to enter into such

agreements with each other as they see fit, and it is the purpose of the law and the function of the courts to enforce their contracts. Accordingly, the rule established in this State is, that where an application for life insurance is expressly declared to be a part of the policy and the statements therein contained are warranted to be true, such statements will be deemed material whether they are so or not, and if shown to be false there can be no recovery on the policy however innocently the statements may have been made. But warranties are not favored in the law, and if there is anything to be found in the application or certificate tending to show that the answers and statements were not intended by the parties to be regarded as warranties, such answers or statements as are not material to the risk and were honestly made in the belief that they were true will not present any obstacle to recovery. If such a construction may be reasonably given to the contract the statements will be considered as mere representations notwithstanding the policy states that they are to be deemed warranties, and if not material will not be available as a defense. (*Continental Life Ins. Co. v. Rogers,* 119 Ill. 474; *Provident Sav. Life Assur. Society v. Cannon,* 201 Ill. 260; *Minnesota Mut. Life Ins. Co. v. Link,* 230 Ill. 273.) In this case it was agreed that the answers made to the medical examiner should be warranties, and that any false or untrue statement or answer should operate to forfeit the rights of the beneficiary. There is nothing in the contract which would give any room for interpreting it differently from the language employed in it, and counsel seeking to sustain the judgment do not contend that such is the case. In any event, the answers made were material to the risk and did not relate to a matter of opinion or judgment concerning which there might be a mistaken but honest belief.''

We hold in this case that the statements made by the insured in his medical examination with reference

to his health were warranties, and would vitiate the policy unless substantially true; and we hold that the representations made by the insured for the purpose of obtaining the certificate sued on were representations of fact material to the contract, and would also vitiate the policy unless substantially true. This construction of said contract of insurance is borne out by the authorities above cited.

There being no conflict in the evidence in reference thereto, we find that the representations made by the insured with reference to the condition of his health were material to the risk, and were untrue and rendered void the policy or certificate of insurance. For the reasons stated this cause will therefore be reversed without remanding. The clerk of this court will incorporate the above finding of fact as a part of this judgment.

*Reversed with finding of fact.*