**City of Watseka, County of Iroquois and State of Illinois, Plaintiff-Appellee and Cross-Appellant, v. Bituminous Casualty Corporation of Rock Island, Illinois, Defendant-Appellant and Cross-Appellee.**

Gen. No. 10,570.

Opinion filed May 20, 1952.
Released for publication June 6, 1952.

BUSCH & HARRINGTON, of Champaign, for defendant-appellant and cross-appellee; W. KENNETH PORTER, of Champaign, of counsel.

PALLISSARD, FLEMING & ORAM, of Watseka, for plaintiff-appellee and cross-appellant; KENNETH A. SMITH, of Watseka, of counsel.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The City of Watseka, plaintiff-appellee, in October 1946, purchased from the Bituminous Casualty Corporation, defendant-appellant, a policy of liability insurance, which policy was in continuous force and effect from the date of its issuance up to and including February 27, 1948. The maximum coverage of the policy was $5,000. The insurance policy in general indemnified the city against certain liabilities that might arise against the city, due to accidental injuries. The provisions of the policy, so far as they are pertinent to the issues in this case, are as follows:

"1. Premises—Operations. See Schedule # 1 attached. (Schedule # 1, No. 5506) Street or road paving or repaving surfacing or resurfacing or scraping, (grading of right of way, earth or rock excavation, filling or grading, tunneling, bridge or culvert building, quarrying or stone crushing, to be separately rated)."

The policy further provided that the company would be liable for damages arising out of:

"Street or road paving or repaving, surfacing or resurfacing or scraping."

Attached to and a part of the policy was an endorsement designated as the "Municipal Liability Endorsement." This endorsement contained the following pertinent provisions:

"In consideration of the premium provided for in the within described policy, it is hereby understood and agreed that such insurance as is provided by Division 1, Premises—Operations, does not cover loss arising from bodily injuries and death resulting therefrom . . .

"2. Caused by the existence, ownership, or supervision of streets, highways, roads, sidewalks, alleyways, or other public ways, except that if the declarations of this policy contain a specific classification or specific classifications relating to . . . the construction or

repair of streets, highways, roads or other public ways, then these exclusions shall not apply to any such accident occurring during the prosecution of such construction or repair work."

In August 1947, appellee entered into a contract with P. F. Weilepp Co., to install certain water mains in the city. The contractor under this contract installed a water main extending under Kay street, which was a macadamized public street in the City of Watseka. In November 1947, to accomplish this, the contractor cut a ditch across Kay street about thirty inches in width, installed the water main, and filled in the trench. This job was completed on November 20, 1947, the work was accepted by the city, and the contractor was paid a few days later. Under the contract the contractor was not required to relay the macadamized strip, which had theretofore existed above the trench. When the contract was accepted by the city, the trench was filled in and the dirt from the fill extended some two or three inches above the surface of the adjoining highway, which made a bump in the roadway. The above related facts are undisputed.

The testimony in the record discloses with little variance, except as to small details, the roadway being open for the use of the public, that on January 7, 1948, the city leveled off the mound or bump, picked it down about two inches below the surface, and filled the trench with crushed stone; that several times from January 7 until January 28, city street department employees, observing that the rock and stone had been thrown out of the trench by vehicles moving over it, raked the stone back into the trench; that the city did no work on the trench from January 28, 1948, up to and including February 27, 1948, the date of the accident hereinafter related.

A number of witnesses testified both on behalf of the appellee and the appellant that from November

until the date of the accident there were holes in the trench, while the street was being used. These holes were described by the various witnesses as being from three to fourteen inches deep, and some of them two and a half feet wide.

There is no question but that Kay street was macadamized, commonly known as black topped. It was constructed of a base of crushed stone or gravel with bituminous material commonly known as black top. The roadway over the trench before the cut was made was likewise made of this material.

Tracey A. Pitzen testified for the appellee, and stated that he was an engineer with vast experience concerning the building of black topped or macadamized city streets; that the ordinary practice used in repairing a roadway over a trench which has been cut across the highway, is to fill in the trench, permit this material to settle until a solid base has been obtained, and then cover it with the black-top material; that this is done to obtain a smooth highway, so the black top will not settle into the trench; that it sometimes takes considerable time to obtain the settling of the material in the trench, depending on the nature of the soil and how the work is done; that such time may be three months or possibly a year.

The preponderance of the evidence as disclosed by the testimony in this record is that the City of Watseka had not completed the construction of the improvement; that it was necessary for the trench to settle; that it was impractical to place the black top over the trench in the winter; that in the intervening time the city kept the highway in condition for travel, and put material in the trench so that it would settle, and could be black topped in the spring, or as soon thereafter as the material in the trench had fully settled.

On February 27, 1948, Ronald Roy Romine, while riding in his father's truck, was thrown out and re-

ceived serious personal injury. This happened because while crossing the above described trench, a wheel of the truck dropped into a hole in the cut. Ronald Roy Romine later brought suit against the City of Watseka, alleging the highway was defective, and recovered a judgment by verdict of the jury in the circuit court of Iroquois county for $15,000. On appeal this judgment was affirmed by this court. (*Romine v. City of Watseka*, 341 Ill. App. 370.)

Plaintiff-appellee subsequently brought suit against the appellant, on the insurance policy involved, in the circuit court of Iroquois county, the complaint alleging that the amount of $5,000 and interest on same was due the appellee under the terms of the above mentioned policy of insurance. The appellant by its answer denied liability. On this issue, on trial before the court without a jury, the trial judge entered a judgment in favor of the City of Watseka, plaintiff-appellee, and against the Bituminous Casualty Corporation of Rock Island, defendant-appellant, for $5,000 and interest on the same from the date of the entry of the Romine judgment in the circuit court. Defendant-appellant has appealed from this judgment.

One of the principal questions presented to this court is a question of law. It is apparent from a reading of the policy and the municipal liability endorsement attached, that the appellant was not liable on its policy caused by the negligence of the appellee due to injuries sustained arising out of defects in the street unless the accident occurred during "the prosecution of such construction or repair work."

Thus the principal question is whether or not the appellant is liable under the language of the policy.

The principles governing the interpretation and construction of insurance contracts do not differ from those controlling in other contracts. (*Capps v.*

154

*National Union Fire Ins. Co.*, 318 Ill. 350; *Cottingham v. National Mutual Church Ins. Co.*, 290 Ill. 26.)

■■ If insurance contracts are free from ambiguity, the language used is to be construed according to the plain, ordinary, and generally understood meaning of such language. (*Pioneer Life Ins. Co. v. Alliance Life Ins. Co.*, 374 Ill. 576.) If the language is unambiguous, the courts are not permitted to give the language a distorted interpretation to defeat the intent and purpose of the contract of insurance. (*Crosse v. Supreme Lodge Knights & Ladies of Honor*, 254 Ill. 80; *S. S. Newell & Co. v. American Mut. Liability Ins. Co.*, 199 S. C. 325, 19 S. E. (2d) 463; *City of Dover v. Standard Accident Ins. Co.*, 92 N. H. 59, 24 Atl. (2d) 496.)

■ The terms of an insurance policy should be construed most favorably to the insured to avoid forfeiture and in a sense which the insured may have reasonably understood. (*Swann v. National Union Benefit Ass'n*, 357 Ill. 78.) Applying these fundamental rules of interpretation of insurance contracts to the instant case, it is apparent from a reading of the contract and the record that the company was undoubtedly liable for any injury sustained while the construction or repair work was being done. It is also clear to us that at the time of the Romine boy's injury, neither the repair of the water main nor the street had been finished. There is no doubt but what the project was still under construction and would remain under construction until the black topping over the cut was finished. The accepted common meaning of the word "construct" is to build. Such a definition of the word was announced in *The People v. New York Cent. R. Co.*, 397 Ill. 247.

The policy in the instant case further provides that before the insurance company is liable, the accident must have occurred during the prosecution of the con-

struction or repair work. Thus it becomes necessary to determine the meaning of the word "prosecution" as used in the contract.

Webster's Dictionary defines the word "prosecute" as follows:

"(1). To follow or pursue with a view to reach, execute or accomplish; carry on; to continue."

■■ Words may not always have the same meaning. The meaning here of the word "prosecute" is dependent on the particular language used with it and should be understood in a sense to carry out, if possible, what the insured intended it to mean to prevent forfeiture of the insurance. Under the above definition it appears to us that the city was pursuing the completion of the construction and was executing, carrying on, seeking to accomplish, and hence was prosecuting it. If the city had been delayed by reason of the weather or lack of material, from proceeding with the construction work for a short period of time, we do not believe anyone would contend that the work was not under prosecution if an accidental injury had occurred during this intervening time; and then the insurance company would have been liable. (*City of Dover v. Standard Accident Ins. Co.*, 92 N. H. 59, 24 Atl. (2d) 496.) The City of Watseka was delaying the final completion of the construction so that the trench might settle, and in the intervening time had placed rock in the trench to build it up for the dual purpose of getting the street ready to black top and of keeping the street safely open for travel. In road construction it is often necessary to permit fills made on highways to settle before the finished concrete road is added, and during the intervening time, as here, the roadway is kept in repair for the safety of the public. We believe it cannot be said that during such periods the construction is not being prosecuted.

■ The policy was written by the company, and in case of doubt of the interpretation of its language,

156

such doubt should be resolved in favor of the insured. It is likewise true that the completion of the construction was partly contingent on inclement weather so that it could not be finished until spring. We believe that the construction and repair work were not completed at the time of the Romine boy's injury and at that time were being prosecuted by the city.

Appellant cites the above mentioned *S. S. Newell & Co.* case as being in point. The nonliability feature of the language used in that policy is so different from the language here, that we deem it of little assistance. In the *City of Dover* case the policy of insurance provided that the insurer was not liable unless the highway was "actually under repairs" by the city. The facts disclosed that at the time of the accidental injury the repairs to the bridge had been completed. The court found there was no liability on the contract of insurance. Under the facts of that case and the language used in the policy, it was clear that there was no liability.

Appellee contends that regardless of the interpretation of the language of the policy, appellant waived this defense that the language of the policy precluded recovery. In view of our interpretation of the policy, it is not necessary for us to pass on this question.

Appellee contends by cross-error that the trial court should have allowed interest on the entire amount of the Romine judgment instead of the $5,000. We believe this contention to be without merit and the trial court was correct.

We have examined this record carefully and believe the assignments of error urged by the appellant are without merit and that the judgment of the trial court was correct and accordingly his judgment should be and is affirmed.

*Judgment affirmed.*