**RANGER INSURANCE COMPANY,**
**Plaintiff and Counter–Defendant,**

**v.**

**HOME INDEMNITY COMPANY, Defendant and Counter–Plaintiff.**

No. 88 C 5180.

United States District Court,
N.D. Illinois, E.D.

June 5, 1989.

Robert Marc Chemers, Pretzel & Stouffer, Chicago, Ill., for plaintiff and counter-defendant.

John D. Kuhn, Howard T. Brinton, Brinton & Bollinger, Chicago, Ill., for defendant and counter-plaintiff.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This multi-count action arises from a dispute between defendant Home Indemnity Co. ("Home"), the primary carrier of comprehensive liability coverage for Mid States General & Mechanical Contracting Corp. ("Mid States") and plaintiff Ranger Insurance Co., the excess carrier, over who should assume liability for the judgment and post-judgment interest assessed against Mid States in a personal injury action. Currently before the Court are various motions for summary judgment and to dismiss. For the reasons set forth below, we grant Ranger's motion for summary judgment on Count I and to dismiss the counterclaim and deny Home's motion for summary judgment on all counts.

## I.

### Factual Background

In 1983, Paul Hall, an employee of the Corrigan Co., was killed when he fell through a catwalk at an Archer–Daniels–Midland Company ("ADM") plant in Decatur, Illinois. ADM had hired the Corrigan Co. to fit pipes in a construction project at the Decatur plant. Sarah Hall, conservator of Hall's estate, filed a personal injury action against Mid States, general contractor for the project, and ADM. ADM settled with Hall for $1,500,000 and thereafter pursued contribution claims against Mid States and the Corrigan Co. At the time, Home insured Mid States for up to $500,000 under a primary coverage policy. Mid States also had excess coverage under a policy with Ranger. Throughout the Hall litigation, Home assumed full responsibility for Mid States' defense. After a trial on ADM's contribution claims, a jury found Mid States 48% at fault for Paul Hall's accident, and the court entered judgment against Mid States in the amount of $788,989.

Mid States appealed. As at trial, Home controlled the litigation and at no time requested Ranger's participation. Before the appellate court rendered its decision, Home offered to settle with ADM for $500,000, the face value of the primary coverage policy, without interest. ADM accepted on the condition that Ranger pay the remaining $288,989. Ranger, apparently optimistic about Mid States' chances on appeal, offered ADM $145,000. ADM refused, and the parties decided to forego settlement and rely on their fortunes before the appellate courts. At least in the short term, Ranger's optimism proved well-founded. On April 7, 1986, the appellate court reversed the jury verdict and remanded for retrial. *Hall v. Archer–Daniels–Midland Co.*, 142 Ill.App.3d 200, 96 Ill.Dec. 600, 491 N.E.2d 879 (4th Dist.1986). However, two years later, the Illinois Supreme Court reinstated the jury verdict. *Hall v. Archer–Daniels–Midland Co.*, 122 Ill.2d 448, 120 Ill.Dec. 556, 524 N.E.2d 586 (1988).

This action originally involved only Ranger and Home's dispute over how liability for post-judgment interest on the $788,989 judgment against Mid States should be apportioned. In what is now Count I, Ranger charges that Home is liable for interest on the entire judgment, including Ranger's $288,989 portion. Since the original complaint, the parties' differences have widened into an attempt by each side to pin on the other liability for the entire judgment.

In Counts II and III of its amended complaint, Ranger charges that Home's failure to engage in reasonable settlement negotiations with Sarah Hall before ADM settled for $1,500,000 violated its duties as primary carrier to Ranger and thus renders Home additionally liable for Ranger's $288,989 portion of the judgment. Home charges in a counterclaim that Ranger's refusal to accept ADM's offer prior to the appellate decision, a settlement that would have spared both parties post-judgment interest, violated Ranger's duty to Home to pursue settlement in good faith and that Ranger is accordingly liable for all post-judgment interest and Home's $500,000 portion of the judgment. The motions here are directed at all counts, and we address each in turn.

## II.

### Count I

■ Ranger's claim that Home is liable for post-judgment interest that accrued on the entire judgment against Mid States hinges on the following provision in the Home policy:

> The company [Home] will pay, in addition to the applicable limit of liability [i.e., $500,000]:
>
> (a) All expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon.

Home never tendered to ADM or deposited in any state court the full amount of the judgment against it—$500,000 plus interest

accrued on that amount. Accordingly, Ranger concludes, Home must additionally assume Ranger's liability for post-judgment interest on that portion of the judgment covered by the Ranger excess liability policy.

Illinois law, which the parties agree governs this action, squarely supports Ranger's application of this post-judgment interest provision. In *River Valley Cartage Co. v. Hawkeye–Security Ins. Co.*, 17 Ill.2d 242, 161 N.E.2d 101 (1959), an insured attempted to recover post-judgment interest accrued on a $175,000 judgment assessed against it from an insurer that covered only $50,000 of that judgment. The insurer had tendered $50,000 to the insured but did not include post-judgment interest that had accrued on that $50,000. The Illinois Supreme Court interpreted a clause virtually identical to that of the Home policy [1] to hold the insurer liable for post-judgment interest that accrued on the entire $175,000 judgment. The court reasoned that the unambiguous language in the clause and "the realities of the relationship between the insurer and insured" indicate that the insurer had agreed to pay interest that accrued on a judgment until it properly tendered its portion of that judgment, post-judgment interest that accrued on that portion and costs. *Id.*, 161 N.E.2d at 103. *River Valley* remains good law in Illinois. *Green v. J.C. Penney Auto Ins. Co., Inc.*, 806 F.2d 759, 764 (7th Cir.1986). *See also Murphy v. Clancy*, 83 Ill.App.3d 779, 38 Ill.Dec. 863, 877, 404 N.E.2d 287, 301 (1st Dist.1980), *aff'd in part and rev'd in part sub nom., Murphy v. Urso*, 88 Ill.2d 444, 58 Ill.Dec. 828, 430 N.E.2d 1079 (1981).[2]

Recently, an Illinois appellate court interpreted a substantially identical clause in an action between the insured's primary and excess carriers. *Hartford Acci. & Indem.*

---

**1.** The clause in *River Valley* obligated the carrier to pay

> all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid, tendered or deposited in court such part of the judgment as does not exceed the limit of the company's liability thereon.

161 N.E.2d at 103.

**2.** In an attempt to circumvent *River Valley*, Home curiously relies on a pre-*River Valley* decision of a lower appellate court, *Watseka v. Bituminous Casualty Corp.*, 347 Ill.App. 149, 106 N.E.2d 204 (2d Dist.1952), and decisions by the Ninth and Tenth Circuits applying the law of other jurisdictions. As the Seventh Circuit made clear in *Green, River Valley* controls in actions governed by Illinois law.

*Co. v. Aetna Ins. Co.*, 173 Ill.App.3d 665, 123 Ill.Dec. 312, 527 N.E.2d 950 (1st Dist. 1988). The insured there had primary liability coverage of $1,000,000 from Aetna and excess coverage from Hartford. A $1,500,000 judgment was entered against the insured. Over two years later, Aetna paid to the prevailing party in that underlying action $1,000,000 and post-judgment interest on that amount. Hartford brought an action claiming that Aetna was additionally liable under a post-judgment interest clause for interest that accrued during the two years on the additional $500,000. Relying primarily on *River Valley*, the appellate court agreed with Hartford. The significance of this decision is that the court found the existence of excess coverage of no consequence: "Aetna's undertaking to pay all interest accruing after the entry of judgment in a case it defends contains no exception relating to excess coverage." 123 Ill.Dec. at 315, 527 N.E.2d at 953.

■ Home seeks to avoid liability under the post-judgment interest clause by contending initially that it tendered payment within the meaning of the clause when it offered $500,000 to ADM and ADM expressed a willingness to accept that amount as full payment. In effect, Home argues that it should not be penalized for attempting a tender that failed only because Ranger refused to accept ADM's terms. We do not view Ranger's conduct as a basis for relieving Home of its obligations under the post-judgment interest clause. Home agreed to assume all risks accompanying an appeal, including the possibility that in the event the insured incurred liability in excess of the primary coverage, an excess carrier might not agree to settle with the judgment creditor on Home's terms. As the court reasoned in *Hartford Indemnity,* the existence of excess coverage does not change Home's duties under the post-judgment interest clause. Ranger owed no duty to Home or Mid States to settle on the judgment creditor and primary carrier's terms.[3] Home could have avoided any further liability under the post-judgment inter-

est clause by immediately tendering the appropriate amount ($500,000 plus interest and costs accrued to that point) to ADM or by depositing the same in court. It did neither and is accordingly additionally responsible under *River Valley* for interest accrued on Ranger's portion of the judgment.

■ Home contends further that Ranger's bad faith failure to accept ADM's settlement offer which would have relieved Home of liability under the post-judgment interest clause excuses Home's failure to tender. Even if Ranger's conduct could somehow relieve Home of its liability under the post-judgment interest clause, a proposition of law we reject in Section IV of this opinion, Home cannot defeat Ranger's motion for summary judgment or prevail in its own motion on this basis because it has presented no evidence supporting a finding that Ranger's decision to reject ADM's offer was made in bad faith.

The fact that Ranger turned down an offer that later proved favorable does not by itself support a finding of bad faith. *Browning v. Heritage Ins. Co.,* 33 Ill. App.3d 943, 338 N.E.2d 912, 915 (2d Dist. 1975):

> If [Ranger] chose the correct course on the basis of what [it] knew, [it] should not be called mistaken because of unavoidable uncertainty about whether the cause would succeed.

*Steele v. Hartford Fire Ins. Co.,* 788 F.2d 441, 447 (7th Cir.1986). Those portions of the record to which Home directs our attention only demonstrate that Ranger made a counter-offer of $145,000, and its decision not to accept ADM's offer was temporarily vindicated in the first appeal. Further, Ranger was reasonable, indeed correct, in believing that it was not liable for any post-judgment interest on its portion of the judgment against Mid States until Home properly tendered the appropriate sums to ADM. Thus, at the time of ADM's offer, Ranger was asked to settle for an amount

---

**3.** In Section IV of this opinion, we assess Home's counterclaim to conclude that Ranger does not owe this duty to Home.

that represented its maximum liability. Notwithstanding Home's characterization of Ranger's position as having constituted a "selfish, it-had-nothing-to-lose attitude," Ranger can hardly be faulted for refusing that offer in light of the favorable outlook on appeal.

■ Finally, Home contends that Ranger is liable for the post-judgment interest that accrued during appeal under the following provision in the Ranger policy:

> APPEALS. In the event the insured or the insured's underlying insurer elects not to appeal a judgment in excess of the retained limit, the Company may elect to do so at its own expense, and shall be liable for the taxable costs, disbursements and interest incidental thereto, but in no event shall the liability of the Company for ultimate net loss exceed the amount set forth in Insuring Agreement III (Limit of Liability—Retained Limit) for any one occurrence plus the taxable costs, disbursements and interest incidental to such appeal.

This provision has no relevance to this case because by its very terms it applies only when Mid States or Home, as the underlying insurer, elect not to appeal.

In sum, Home is liable as a matter of law under the post-judgment interest provision for interest accruing on the entire judgment against Mid States. Neither Ranger's refusal to settle on Home's and ADM's terms nor the condition in the Ranger policy create an issue of material fact or support of judgment in Home's favor. Accordingly, Ranger's motion for summary judgment on Count I is granted, and Home's cross-motion is denied.

### III.

### Counts II and III

In Counts II and III, Ranger charges that Home negligently or in bad faith failed to settle with Hall on behalf of Mid States

within the coverage cap of $500,000 when it had an opportunity to do so and thereby exposed Ranger to liability as excess carrier. Home seeks judgment on these claims essentially on three grounds: Home owed no duty to Ranger to attempt to settle within the policy limit, Ranger's claim is preempted by § 155 of the Illinois Insurance Code, Ill.Rev.Stat. ch. 73, ¶ 767, and the undisputed facts establish that Home negotiated with due care and in good faith.

#### A. *The Primary Carrier's Duty to an Excess Carrier*

Under Illinois law, a primary carrier has a duty to the insured to undertake settlement negotiations with care and in good faith with a potential judgment creditor in an effort to resolve the underlying dispute within policy limits. *Scroggins v. Allstate Ins. Co.,* 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 684, 393 N.E.2d 718, 720 (1st Dist.1979). While Illinois courts have yet to address the issue, the vast majority of other jurisdictions have held that an excess carrier is equitably subrogated to this right of the insured. *E.g., Puritan Ins. Co. v. Canadian Universal Ins. Co.,* 775 F.2d 76, 79 (3d Cir.1985); *Insurance Co. of North America v. Medical Protective Co.,* 768 F.2d 315, 323 (10th Cir.1985). Given that Illinois favors a liberal application of subrogation principles to effectuate a just resolution of the parties' rights, *Dworak v. Tempel,* 17 Ill.2d 181, 161 N.E.2d 258, 263 (1959), we would tend to find Ranger equitably subrogated to Mid States' rights here. However, Ranger cannot proceed in Counts II and III under this theory of relief because at no point in the complaint does Ranger put Home on notice that its claims are founded on subrogated rights.[4]

We are thus faced with deciding whether, as Ranger additionally contends, a primary carrier owes a direct duty to the excess carrier to attempt to settle within the primary coverage cap. Again, Illinois decisional law provides minimal guidance.

---

**4.** Ranger does not even allege whether it has paid the post-judgment interest on its portion of the Mid States judgment or Mid States itself remains liable to ADM for that amount. If the latter, Ranger as subrogee must bring these claims in Mid States' name. *Pontiac Mut. Coun-*

*try Fire & Lightning Ins. Co. v. Sheibley,* 279 Ill. 118, 116 N.E. 644, 645 (1917); *Central Nat. Bank & Trust Co. v. Central Illinois Light Co.,* 65 Ill.App.2d 287, 212 N.E.2d 489, 493 (3d Dist. 1965).

Nevertheless, we believe that the Illinois Supreme Court would impose such a duty and allow an excess carrier to bring suit in its own right to remedy a breach of that duty. Courts across the country are increasingly amenable to recognizing that a primary carrier owes a direct duty to an excess carrier. *See, e.g., Vencill v. Continental Casualty Co.*, 433 F.Supp. 1371 (S.D.W.Va.1977); *Zurich Ins. Co. v. State Farm Mutual Auto. Ins. Co.*, 137 A.D.2d 401, 524 N.Y.S.2d 202 (N.Y.App.Div.1988); *Commercial Union Ins. Co. v. Medical Protective Co.*, 426 Mich. 109, 393 N.W.2d 479, 485 (1986); *Western World Ins. Co. v. Allstate Ins. Co.*, 150 N.J.Super. 481, 376 A.2d 177, 180 (App.Div.1977). *See also American Home Assur. Co. v. Dykema, Gossett, Spencer, Goodnow & Trigg*, 625 F.Supp. 1052, 1065 (N.D.Ill.1985) (discussing but not expressly imposing the duty under Michigan law), *aff'd in part and rev'd in part*, 811 F.2d 1077 (7th Cir.1987).[5]

Basic principles of tort law support the imposition of this duty despite the lack of contractual privity between the carriers. Illinois law imposes a duty of care when the following conditions are met: the alleged tortfeasor could have reasonably foreseen that its conduct would injure the plaintiff and policy considerations justify placing the risks and the burden of care on the defendant. *See generally Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill.2d 507, 111 Ill.Dec. 944, 953–54, 513 N.E.2d 387, 396–97 (1987), *cert. denied*, — U.S. ——, 108 S.Ct. 1077, 99 L.Ed.2d 236

(1988); *Phillips v. J.F. Martin Cartage Co.*, 42 Ill.App.3d 890, 1 Ill.Dec. 904, 906, 356 N.E.2d 1237, 1239 (1st Dist.1976). A primary carrier could reasonably foresee that its failure to settle within policy limits will in all likelihood injure an excess carrier as much as the insured. *Commercial Union Ins.*, 393 N.W.2d at 485 n. 5. The policy justifications for imposing this duty are legion:

> [These reasons] include the encouragement of settlements when an offer exists at or near the policy limits, discouraging gambling with the excess carrier's money, hoping to keep excess liability insurance premiums low, reducing the necessity for the excess carrier to participate in the defense of the action to protect its rights, and reflecting the duties of the primary carrier to perform the duty which it has delegated to itself, that is, providing primary coverage.

R. Long, *The Law of Liability Insurance* § 5.63 at 5–472 (1980). The mere existence of an excess carrier should not relieve the primary carrier of its settlement obligations. *Estate of Penn v. Amalgamated General Agencies*, 148 N.J.Super. 419, 372 A.2d 1124, 1126–27 (App.Div.1977). As long as the scope of the duty is appropriately defined, the primary carrier is not held to a standard of care that it did not already owe to the insured.

Home contends that despite these general principles, Illinois has manifested a re-

---

**5.** Home cites to two cases in which the courts expressed a reluctance to recognize this direct duty. *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306 (3d Cir.1985); *Pacific Employers Ins. Co. v. United General Ins. Co.*, 664 F.Supp. 1022 (W.D.La.1987). Neither case causes us to hesitate in our decision. In *United States Fire*, the Third Circuit declined to recognize the duty *in that case* without further guidance from the Pennsylvania Supreme Court because the excess carrier presented "no plausible legal or policy basis for so doing." 759 F.2d at 309 n. 3. Like the numerous other courts cited earlier, we find compelling arguments in support of the duty. The court cited without comment to *Puritan Ins. Co. v. Canadian Universal Ins. Co.*, 586 F.Supp. 84 (E.D.Pa.1984), in which a Pennsylvania district court recognized the duty. Curiously, the Third Circuit later reversed the district court, stating that it held in

*United States Fire* that a primary carrier has no direct duty to an excess carrier. *Puritan Ins. Co. v. Canadian Universal Ins. Co.*, 775 F.2d 76, 80 (3d Cir.1985). This leap from a tentative statement in *United States Fire* to a categorical proposition of law without discussion in *Puritan Ins.* renders the holding in the latter not very convincing. In *Pacific Employers*, the district court refused to recognize the duty in Louisiana law because it "perceive[d] no plausible argument in support of a woefully lacking duty risk-relationship between the two insurers which would have to exist to form a basis for a tort recovery." 664 F.Supp. at 1024. Another Louisiana district court earlier interpreted Louisiana law differently and recognized the duty. *Offshore Logistics Services, Inc. v. Arkwright–Boston Mfrs. Mut. Ins. Co.*, 469 F.Supp. 1099, 1103 n. 7 (E.D.La. 1979), *aff'd in part and mod. in part*, 639 F.2d 1142 (5th Cir.1981).

luctance to impose this direct duty on a primary carrier, relying heavily on a series of cases in which Illinois courts held that a judgment creditor of the insured may not merely by virtue of that status bring an action against an insurer for failure to settle in good faith. *Scroggins v. Allstate Ins. Co.*, 74 Ill.App.3d 1027, 30 Ill.Dec. 682, 393 N.E.2d 718 (1st Dist.1979); *Yelm v. County Mut. Ins. Co.*, 123 Ill.App.2d 401, 259 N.E.2d 83 (3d Dist.1970). These decisions do not dissuade us. There is a principled distinction between the position of the judgment creditor and an excess carrier. As the *Scroggins* court made clear, the limitation on a judgment creditor's right to sue is based on the fact that it is often unlikely to suffer damages when a carrier fails to settle and, indeed, may gain if the ultimate judgment exceeds policy coverage. 30 Ill.Dec. at 685, 393 N.E.2d at 721. An excess carrier, on the other hand, stands only to lose when a primary carrier fails to settle with a potential judgment creditor within primary policy limits.

### B. *Preemption under Section 155 of the Insurance Code*

■ Section 155 provides that

(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious or unreasonable ...

Tort actions falling within this provision's reach are preempted. *See generally Matter of Boughton*, 60 B.R. 373, 376–77 (N.D. Ill.1986) (summarizing the inconsistent interpretations of § 155 by Illinois state and federal courts).

District Judge Milton I. Shadur recently held that "[u]nreasonable refusals [by the insurer] to settle a claim *against* the insured must be viewed as a type of conduct not covered by Section 155." *National Union Fire Ins. v. Continental Illinois Corp.*, 673 F.Supp. 267, 271 (N.D.Ill.1987). The Court reasoned that the language and legislative history of the statute demonstrated that the General Assembly intended that § 155 preempt actions charging the insurer with unreasonable delay in paying a claim *to* the insured. The difficulties that § 155 preemption was intended to overcome do not exist in an action charging unreasonable refusal to settle with a potential judgment creditor within primary coverage limits:

> the damage to the insured is truly direct rather than consequential—it is clearly measurable (in terms of the third party's excess recovery over the policy limits) and poses no arcane proximate cause issues.

*Id.* We agree and adopt the holding and reasoning of *National Union*. Accordingly, we find that § 155 does not preempt Ranger's claims in Counts II and III.

### C. *Issues of Fact*

■ Finally, we must determine whether Ranger has presented sufficient evidence from which a trier of fact can conclude that Home breached its duty to undertake settlement negotiations in good faith. For a primary insurer to be found liable for bad faith refusal to settle, an insured (and therefore the excess carrier) must prove that the judgment creditor offered terms of settlement within the policy coverage, *Smiley v. Manchester Ins. & Indem. Co.*, 13 Ill.App.3d 809, 301 N.E.2d 19 (2d Dist. 1973), and there was a real possibility of an adverse judgment greater than the coverage limit. *Phelan v. State Farm Mut. Auto. Ins. Co.*, 114 Ill.App.3d 96, 69 Ill.Dec. 861, 865, 448 N.E.2d 579, 585 (1st Dist. 1983). Ranger has satisfied its burden of presentation in opposition to summary judgment. Ranger presents testimony establishing that for a period of time Home had the opportunity to bring the Hall action to a settlement on terms holding Mid States liable for only $250,000 and that on numerous occasions Home was warned that Mid States faced a potential liability of $1 million.[6] With this evidence, Ranger

---

**6.** Home contends that this offer may have been on the table for only a short period of time, possibly only a day, and that Hall later demanded more. This argument is more appropriately

has created a material issue of fact precluding summary judgment on Counts II and III.

### IV.

### Home's Counterclaim

 Home's counterclaim that Ranger is liable for Home's $500,000 portion of the judgment against Mid States because Ranger refused to settle with ADM just before the appeal presupposes a duty owed by Ranger to Home. We find that the law does not recognize such a duty either under a theory of equitable subrogation or directly. An insurance company as subrogee can bring only those actions which the insured could maintain. *American National Bank & Trust Co. v. Weyerhaeuser Co.*, 692 F.2d 455, 461 (7th Cir.1982). Mid States has no possible claim against Ranger arising from Ranger's alleged bad faith failure to settle. The only one who suffered from Ranger's alleged misconduct was Home by virtue of its having to pay post-judgment interest. Additionally, circumstances here do not warrant the recognition of a direct duty running from an excess carrier to a primary carrier. Unlike the situation pled in Ranger's Counts II and III, in which Ranger's injury resulted from circumstances over which only Home had control, Home's injury in the counterclaims resulted from its own assumption of risk by virtue of the post-judgment interest clause and its failure to tender or deposit in the state courts the appropriate funds. Policy does not justify holding Ranger liable for Home's ill-fated gamble. Moreover, in Counts II and III, Ranger seeks to hold Home liable only for injury which Home itself had the power to avoid—excess liability. Here, even were we to recognize the asserted duty, Ranger can be considered responsible at most for post-judgment interest.[7]

### V.

### Conclusion

Ranger has demonstrated on the undisputed facts that Home is responsible for post-judgment interest that has accrued on the entire judgment assessed against Mid States. Ranger has also created an issue of material fact as to whether Home breached its duty of care to Ranger to settle the Hall action within the primary policy limit of $500,000. Ranger had no duty to Home in post-judgment settlement negotiations. Accordingly, Ranger's motion for summary judgment on Count I is granted, and Home's cross-motion is denied. Home's motion for summary judgment on Counts II and III is denied. Ranger's motion to dismiss the counterclaim is granted. It is so ordered.

---

made to the trier of fact and does not warrant the entry of judgment against Ranger at this stage of the litigation.

7. Home relies on a series of cases in which the courts held that certain conduct by the judgment creditor may excuse the primary carrier's failure to tender. *Casciola v. Gardner*, 101 Ill. App.3d 852, 57 Ill.Dec. 241, 428 N.E.2d 921 (1st Dist.1981); *Needy v. Sparks*, 74 Ill.App.3d 914, 30 Ill.Dec. 905, 393 N.E.2d 1252 (1st Dist.1979).

At the outset, we note that in those decisions, unlike here, the primary carrier offered to tender the appropriate amount, its portion of the judgment plus interest on that portion and costs. Further, these decisions in no way support a broader proposition of law that an excess carrier's failure to settle on the judgment creditor and primary carrier's terms relieves the primary carrier of its duty to tender.